BUCKEYE UNION FIRE INSURANCE COMPANY *v.*
STATE OF MICHIGAN.

EMPLOYERS MUTUAL FIRE INSURANCE COMPANY
*v.* STATE OF MICHIGAN.

1. NUISANCE—WORDS AND PHRASES—TORTS—DUE CARE.

A nuisance is primarily a condition, which may result from a
want of due care, but may still exist as a dangerous, offensive,
or hazardous condition even with the best of care, and lia-
bility for the maintenance of a nuisance is not predicated
on tortious conduct through action or inaction on the part of
those responsible for the condition.

2. NUISANCE—FIRE HAZARD—DAMAGES—ADJACENT PROPERTY—LIA-
BILITY.

Damages to plaintiffs by burning of buildings of their insureds
flowed from a nuisance maintained by the state in the form
of a fire hazard, the very nature of which was that eventually
negligent or lawless acts or chance or an act of God (lightning)
would convert the peril to the neighboring land into a destruc-
tive force, and the fact that negligence may have existed in
a variety of acts or by inaction by the state during the
period of the nuisance will not permit the state to escape
its liability.

3. PROPERTY — STATES — TAX SALE — REDEMPTION — LOCAL TAXING
UNITS.

Title to property bid off to the state at a tax sale for unpaid
taxes and conveyed to the state by tax deed is in the state
and the extent of that title and the state's responsibility over
the condition of the property is unaffected by the right of
the local taxing units where the property is located to redeem
from the tax sale.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 39 Am Jur, Nuisance § 2.
[3] 39 Am Jur, Nuisance § 35.
[4] 26 Am Jur 2d, Eminent Domain § 162 *et seq.*
Damage to private property caused by negligence of governmental
agents as "taking," "damage," or "use" for public purposes, in
constitutional sense.  2 ALR2d 677.

4. DAMAGES—STATES—SOVEREIGN IMMUNITY—NUISANCE—CONSTITU-
TIONAL LAW.

  Damage to property of adjacent landowners by a fire caused by
  the maintenance of a nuisance by the state was a taking for
  which the constitution requires compensation, and the state
  has no sovereign immunity from liability for such a nuisance
  (Const 1908, art 13, § 1).

Appeal from Court of Appeals, Division 2, Le-
sinski, C. J., and McGregor and Canham, JJ., affirm-
ing Court of Claims, Leo W. Corkin, J., presiding.
Submitted January 15, 1970. (Calendar No. 13,
Docket Nos. 52,205, 52,206.) Decided July 17, 1970.

13 Mich App 498, reversed and remanded.

Claims by Buckeye Union Fire Insurance Com-
pany and Employers Mutual Fire Insurance Com-
pany against the State of Michigan and the Com-
missioner of Michigan State Police for fire damage.
Judgment for defendants. Plaintiffs appealed to
the Court of Appeals. Affirmed. Plaintiffs appeal.
Reversed and remanded to Court of Claims for
judgment in favor of plaintiffs against the state
and for further proceedings if deemed necessary.

*Kenneth C. Davies,* for plaintiff Buckeye Union
Fire Insurance Company.

*Robert B. Tatham,* for plaintiff Employers Mutual
Fire Insurance Company.

*Norman L. Zemke,* P. C., of counsel, for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Russell A. Searl,
Wallace K. Sagendorph* and *Jerome Maslowski,*
Assistant Attorneys General, for defendants.

ADAMS, J.

## FACTS AND PROCEEDINGS

Industrial property in Detroit, known as the Briggs-Meldrum Plant, was bid off at tax sale in May, 1961, to the State of Michigan for unpaid taxes. Title was conveyed to the state by tax deed of the Auditor General dated June 1, 1962. Buildings on the premises caught fire on April 10, 1963. The fire spread to neighboring properties. Plaintiffs paid for losses to such properties and commenced suit in the Court of Claims to recover from the state. That court denied recovery. The Court of Appeals affirmed (13 Mich App 498). We granted leave to appeal (381 Mich 814).

Plaintiffs maintain that, because of the condition of the unoccupied Meldrum Plant which was readily accessible to vandals and trespassers, a fire hazard resulted to neighboring property owners. The condition existed when the state acquired title and continued and, in fact, worsened. It constituted a nuisance to the premises and properties insured by plaintiffs.

The state's defense is:

1. That the facts will not sustain a cause of action upon a theory of nuisance;

2. That since the property was bid in at tax sale in the name of the state, and on the date of the fire was subject to redemption therefrom, the state did not have such title to the property as would impose liability for failure to abate a preexisting hazardous condition of the premises;

3. That the state has sovereign immunity from any such liability.

## I. NUISANCE

The trial judge made the following determination:

"The evidence clearly shows that as early as 1958 the building was causing concern to neighbors and to the Fire Prevention Department of the City of Detroit. The building continued to deteriorate up to time of the fire, and there is no question but what the building was a fire hazard when the state bid in the property and continued to be so until the fire occurred.

\* \* \*

"Is a fire hazard a nuisance? An affirmative answer would appear to be obvious, and no argument to the contrary is advanced by the defendants."

As to the liability of the state, however, the court held:

"This case would appear to be one of failure by the state to abate a nuisance that it did not create. Basically this would involve *negligence* on the part of the agents of the State *in not abating the nuisance;* there being no 'claim that the state created a nuisance *per se.* In *Royston* v. *City of Charlotte* (1936), 278 Mich 255 it was said:

" 'Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care.'

"In short, the State of Michigan has sovereign immunity from tort liability by reason of the negligent acts or omissions of its servants or agents, except as that liability has been statutorily modified." (Emphasis added.)

The *Royston* case on which the trial judge relied was an action for damages for personal injuries sus-

tained when a swing broke in a city park causing the death of plaintiff's minor decedent. This Court rejected the first of plaintiff's theories of recovery— attractive nuisance—on the ground that trespass is the basic requirement of that doctrine. Plaintiff's second theory was public nuisance. The trial court held the faulty swing to be a public nuisance which made the city liable even though in the performance of a governmental function. In deciding the holding of the trial judge was erroneous, this Court said (p 260):

"If a municipality performed a governmental function in erecting the swing and 'is not liable for injuries received by negligence of its employees and agents in the maintenance thereof,' it is inconsistent to hold that recovery may be had on the ground that such negligence of the employees or agents of the municipality in the maintenance of the swing constituted the swing a public nuisance. A city can act only through its officers or employees and if there was *negligence in making inspection of the condition of the swing and not discovering the defective condition then there was but negligence in the maintenance* and no liability.

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. *Want of care in maintenance,* however, *presents the question of negligence only,* and not that of a public nuisance, which must rest on inherent danger even under the best of care." (Emphasis added.)

It must be concluded that *Royston* is not applicable to a case involving a nuisance, this Court having clearly held that the situation in *Royston* involved negligence only. The term "nuisance" has come to have significance in the law in a variety of meanings. It is often associated with loud noises or objectionable odors, or with some types of inter-

ference with the use and enjoyment of public places (a public highway, public park, or navigable river), or the unlicensed practice of a profession, or condition which endangers the health or safety of the public, or involves an invasion of an interest in the use and enjoyment of land. Such a wide diversification of meaning has led to confusion in determining liability or nonliability. This is especially the case when the element of negligence is injected into a case based upon a claim of nuisance.

In this case, the opinion in the Court of Appeals makes no mention of *Royston* (13 Mich App 498). Nine months later, in *Maki* v. *City of East Tawas* (1969), 18 Mich App 109, the Court of Appeals said (p 118):

"Thus, this Court concludes that the *Royston* case, *supra,* insofar as it holds that want of care in maintenance presents a question of negligence only, and not that of a public nuisance, has been overruled indirectly by subsequent cases, *Denny, Dahl, Young, supra,* and that the plaintiff has stated a cause of action in nuisance even though the allegations relate solely to negligence."[1]

The *Royston, Denny, Dahl* and *Young* cases involved claims for personal injuries and are within that class of cases described as nuisance having its origin in negligence and as to which contributory negligence is a defense.[2] Negligence, which is antecedent to and responsible for the nuisance, is not our concern here even though the nuisance in this case may have been created by negligent acts.

---

[1] *Denny, Dahl,* and *Young,* respectively, refer to the cases of *Denny* v. *Garavaglia* (1952), 333 Mich 317, *Dahl* v. *Glover* (1956), 344 Mich 639, and *Young* v. *Groenendal* (1968), 10 Mich App 112. On appeal, the *Young* case was subsequently affirmed by an equally divided court (382 Mich 456).

[2] The cases of *Brown* v. *Nichols* (1953), 337 Mich 684, *Bluemer* v. *Saginaw Oil & Gas Service, Inc.* (1959), 356 Mich 399, and *Munson* v. *County of Menominee* (1963), 371 Mich 504, may be added to the list.

Plaintiffs' claims are for damage to land caused by
the condition or use of defendant's land and the
negligence upon which the state bases its defense
is *failure to abate* the existing nuisance that was
upon the land when the state took title.   Since the
Court of Claims judge found there was a nuisance
and since we agree with that finding, cases involving
what may constitute a nuisance are not examined
in this opinion.   See, however, *Pennoyer* v. *City
of Saginaw* (1860), 8 Mich 534; *Whittemore* v. *Bax-
ter Laundry Co.* (1914), 181 Mich 564; *Birchard* v.
*Board of Health of the City of Lansing* (1918), 204
Mich 284; *Burdick* v. *Stebbins* (1930), 250 Mich 665;
*McMorran* v. *Cleveland-Cliffs Iron Co.* (1931), 253
Mich 65; *Northwest Home Owners Ass'n* v. *City of
Detroit* (1941), 298 Mich 622; and *Obrecht* v. *Na-
tional Gypsum Company* (1960), 361 Mich 399.

Primarily, nuisance is a condition.   Liability is
not predicated on tortious conduct through action or
inaction on the part of those responsible for the
condition.   Nuisance may result from want of due
care (like a hole in a highway), but may still exist
as a dangerous, offensive, or hazardous condition
even with the best of care.   *Bowman* v. *Humphrey*
(1906), 132 Iowa 234 (109 NW 714).

The state had notice and knowledge of the con-
dition of the Meldrum Avenue Plant after the state
acquired title thereto.   The state is in no position
to claim to the contrary.   Any question of notice is
covered in the following recitals from the opinion
of the Court of Claims:

"The evidence clearly shows that as early as 1958
the building was causing concern to neighbors and
to the Fire Prevention Department of the City of
Detroit.   The building continued to deteriorate up
to time of the fire, and there is no question but
what the building was a fire hazard when the state

bid in the property and continued to be so until the fire occurred.

"By Notice of Violation dated August 16, 1962 the City of Detroit by its Department of Building and Safety Engineering notified the Michigan Department of Conservation that as a result of an inspection of a dangerous factory located at 3100 Meldrum the state was ordered to:

"1. Securely barricade all door and window openings in this open and dangerous building and remove all loose and dangerous sections of corrugated iron and steel frame at west section near loading deck of factory building at 3100 Meldrum, and also known as City of Detroit, Ward 15–39–13, Walkers and Radcliff's Subd. of S60 of W 154.80 feet of O.L. 25 lyg E of and adjacent Meldrum Avenue and N of Lot 18 of Walker's and Radcliff's Subdivision, or,

"2. Secure wrecking permit and dismantle and remove this open and dangerous building.

"Following this there was correspondence which culminated in the Department of Conservation informing the city that it was impossible for it to comply with the terms of said notice due to the lack of available funds and also calling the city's attention to the fact that the property was being withheld from tax sale at the request of the city. The state suggested that the city itself proceed to barricade the premises.

"It would also appear that an employee of the Conservation Department inspected the premises and submitted his report dated September 18, 1962 in which it was stated: 'A large!! three to four and five story factory building unused for a number of years, entirely vandalized. Portions are sound and part very bad, completely open to weather and trespass.'

"The court finds that the State of Michigan, through its agents, had notice of the condition of the building some months prior to the date of the fire."

It was in the very nature of the nuisance involved in this case—a fire hazard—that eventually negligent or lawless acts or sheer chance or an act of God (lightning) would convert the peril to the neighboring land into a destructive force—the hazard—the nuisance took its toll. Damage to plaintiffs flowed from the nuisance and the mere fact that negligence may have existed in a variety of acts or by inaction by the state during the continuing period of the nuisance will not permit it to escape its liability.

## II. NATURE OF THE STATE'S TITLE

The Attorney General contends:

"While as against third parties the state has title to the premises, nevertheless, it holds the same for the county and city in proportion to the unpaid taxes levied by and due each. Furthermore, at the date of the fire, the city had the right to redeem the property from the tax sale for the benefit of either itself or the original owner. As of April 10, 1963, the date of the fire, the statute neither authorized nor required taking by any state agency of the action which would have been necessary to abate this fire hazard. * * *

"Thus the state held only bare legal title for the benefit of the local taxing units."

The controlling statute[3] contains the following provision:

"Any municipality may at any time prior to the first Tuesday in November following the vesting of title in the State of Michigan, withhold from sale any lands lying within its boundaries by filing with the Department of Conservation an application for

[3] Section 131c of The General Property Tax Act, as added by PA 1951, No 167, being MCLA § 211.131c (Stat Ann 1960 Rev § 7.190[1]).

such withholding, which application shall accurately describe such lands by their legal descriptions according to the records of the Auditor General or the Department of Conservation. Such withholding shall only be effective until the first Tuesday in November of the year following the date of withholding and shall not affect the right of the state to take possession of such lands and manage and rent the same during the period they are withheld."

In *Baker* v. *State Land Office Board* (1940), 294 Mich 587, this Court reviewed the economic conditions which led to widespread tax delinquency in this state resulting in the passage of laws dealing with delinquent tax sale procedures and right of redemption. In upholding the new legislation, it was decided, *inter alia,* that the right of redemption is not a constitutional right but exists only as permitted by statute, that such rights as arose under the provisions of the statute governing sales for tax delinquency are subject to abridgment by the legislature for the reason they are remedial in nature, and that no vested rights arise out of redemption provisions of a decree entered pursuant to a remedial statute governing tax sales.

In *James A. Welch Co., Inc.,* v. *State Land Office Board* (1940), 295 Mich 85, the Court approved the contention of defendant that (p 93):

" 'Upon the vesting of title absolute in the state, the state's sovereign power of imposing and enforcing the collection of taxes thus reached its completion and fruition, and the particular parcels of land ceased to be amenable to the tax laws of the state, as state-owned land is not taxable. * * * Such land can be disposed of only on conditions prescribed by the legislature.' "

The Court said "plaintiff ceased to have any more interest in the title to the lands described in its petition than any stranger to that title."

What we said in the case of *Rosin* v. *State Land Office Board* (1946), 314 Mich 482, makes clear the extent of the state's title and its responsibility over the condition of the property (p 486):

"When the state acquired title on June 3, 1943, plaintiff as former owner had no more interest in the title than any stranger to the title. *James A. Welch Co., Inc.,* v. *State Land Office Board* (1940), 295 Mich 85. The statutes plainly indicate that the withholding of the property from scavenger sale at the request of the City of Detroit, for a limited period of time, did not affect the state's title or its right to manage the property and collect rents therefrom. After the state acquired title it collected $6,460 rental from plaintiff, the former owner, while allowing him to remain in possession. He is not entitled to recover the rent which the state required him to pay for the occupancy. *Emmons* v. *State Land Office Board* (1943), 305 Mich 406."

## III. Is There Sovereign Immunity?

The legislature in enacting PA 1943, No 237, as an amendment of the Court of Claims Act (PA 1939, No 135), re-wrote § 24 to impose liability on the state for torts of its officers and employees. In *Minty* v. *Board of State Auditors* (1953), 336 Mich 370, a majority of this Court determined the amendment to be a waiver of sovereign immunity from liability, not merely a waiver of sovereign immunity from suit, in those causes of action or claims against the state to which the statute applied. The legislature repealed its 1943 action in 1945 by Act No 87, and thereafter has dealt with waiver of the state's immunity from tort liability by " 'a pattern of deliberate legislative choices.' " *McDowell* v. *State Highway Commissioner* (1961), 365 Mich 268, 271. In *McDowell,* a majority of the Court approved by

quotation the following characterization by the Attorney General in his brief:

"So far as the state itself is concerned, the doctrine of sovereign immunity as it presently exists in Michigan is a creature of the legislature. The doctrine has been modified by the legislature, abolished by the legislature, re-established by the legislature, and further modified by the legislature." (P 271.)

The statement of the Attorney General is subject, however, to applicable and overriding provisions of the State Constitution. To that extent, the legislature does not have an unlimited discretion in shaping the pattern of the state's immunity from liability.

In this case, at the time of the fire, our Constitution prohibited the taking of private property for public use without just compensation. Article 13, § 1, of the Constitution of 1908 provided:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

On numerous occasions we have recognized that the "taking" under the foregoing provision and its counterpart in the Constitution of 1850, was more than land acquisition for public highways and buildings. In *Pearsall* v. *Board of Supervisors of Eaton County* (1889), 74 Mich 558, this Court said (pp 561, 562):

" 'The constitutional provision is adopted for the protection of and security to the rights of the individual as against the government,' and the term 'taking' should not be used in an unreasonable or narrow sense. It should not be limited to the absolute conversion of property, and applied to land only; but it should include cases where the value is

destroyed by the action of the government, or serious injury is inflicted to the property itself, or exclusion of the owner from its enjoyment, or from any of the appurtenances thereto. In either of these cases it is a taking within the meaning of the provision of the constitution.

" 'A partial destruction or diminution in value is a taking.' Mills, Em. Dom. § 30; *Pumpelly* v. *Green Bay Company* (1871), 80 US (13 Wall) 166, 177 (20 L Ed 557); *Cushman* v. *Smith* (1852), 34 Me 247; *Grand Rapids Booming Company* v. *Jarvis* (1874), 30 Mich 308.

"If the public take any action which becomes necessary to subserve public use, and valuable rights of an individual are thereby interfered with, and damaged or destroyed, he is entitled to the compensation which the constitution gives therefor, and such damage or destruction must be regarded as a 'taking.' "

This Court has applied the constitutional restriction to a variety of takings; for example, to situations of trespass from flooding waters escaping from artificial reservoirs, *Ashley* v. *City of Port Huron* (1877), 35 Mich 296; *Herro* v. *Chippewa County Road Commissioners* (1962), 368 Mich 263; to a violation of building restrictions on private property by a city in undertaking to erect a fire station, *Allen* v. *City of Detroit* (1911), 167 Mich 464; and to a city's abortive condemnation proceedings for urban renewal, ultimately abandoned after ten years, *In re Urban Renewal, Elmwood Park Project* (1965), 376 Mich 311.

Courts of other states have applied similar provisions in their state constitutions to factual situations corresponding to those of this case.

In *Commonwealth of Kentucky, Department of Highways* v. *Cochrane* (Ky App, 1965), 397 SW2d 155, work was done on a highway in such a manner

that the excavation and fill was left unseeded and unsodded leaving an area exposed to the weather for about one year. As a result, mud and silt entered a private lake on land owned by plaintiff. The Court of Appeals of Kentucky held that this constituted *pro tanto* a taking for which the Commonwealth was required to respond in damages.

In *Thornburg* v. *Port of Portland* (1962), 233 Or 178 (376 P2d 100), the supreme court held that a property owner's proffered testimony concerning jet flights near his land was admissible in an action wherein the property owner claimed a "taking" under the eminent domain section of the state constitution. The supreme court said (p 192):

"In summary, a taking occurs whenever government acts in such a way as substantially to deprive an owner of the useful possession of that which he owns, either by repeated trespasses or by repeated non-trespassory invasions called 'nuisance'. If reparations are to be denied, they should be denied for reasons of policy which are themselves strong enough to counterbalance the constitutional demand that reparations be paid. None has been pointed out to us in this case."

The fire hazard which the state permitted to continue was a nuisance which directly interfered with the property of plaintiffs' subrogors and ultimately led to its damage.

In *Kurtigian* v. *City of Worcester* (1965), 348 Mass 284 (203 NE2d 692), it was said (p 291):

"This private nuisance was nonetheless one merely because the city had acquired the lot through foreclosure for nonpayment of taxes. Public policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate, and, particularly in an urban area, that there be no oases of nonliability

where a private nuisance may be maintained with impunity."

In *Wilkinson* v. *The Detroit Steel and Spring Works* (1889), 73 Mich 405, this Court said (p 418):

"The obligation to construct a building that would be safe and secure was primary with the defendant, and could neither be delegated nor excused by employing one person to prepare plans, and another person to do the work, and resigning all control and responsibility into his hands. The exercise of reasonable care in the creation or maintenance of a nuisance can never be an absolute defense to an action for an injury occasioned thereby."

There is no sovereign immunity applicable to a situation of nuisance as we have in this case.

The judgments in the Court of Claims and the Court of Appeals are reversed. The case is remanded to the Court of Claims for entry of judgment in favor of plaintiffs and against the state for the amount of their respective claims. For that purpose additional testimony may be taken if deemed necessary.

Costs shall be taxed in favor of plaintiffs.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH, and T. G. KAVANAGH, JJ., concurred with ADAMS, J.