CITY OF MASON v BUCHMAN

Opinion of the Court

1. Nuisance—Public Nuisance—Abatement—Liability—Defenses.

In an action by a city for the abatement of a public nuisance and for the recovery of the costs of the abatement, the landowner may assert that the city created the nuisance and that he is not liable for the cost of abatement, since it is well established by ancient precedent that a city may not charge an innocent landowner for the cost of abatement of a nuisance the city has created and to deny application of the doctrine would require the innocent landowner to pay a judgment he ought not pay and then duplicate his evidence in a separate lawsuit the outcome of which is not certain.

Dissent by Adams, J.

2. Nuisance—Public Nuisance—Abatement—Liability—Defenses.

*The doctrine that the city cannot charge an innocent landowner for the cost of abatement of a nuisance the city has created is not applicable in an action by the city against the landowner for abatement of a public nuisance and for the recovery of the costs of the abatement where the nuisance was allegedly caused by tortious conduct, the city is not the sole purported tortfeasor, and a separate action is pending for damages resulting from the tortious conduct creating the nuisance; the parties responsible for the damage to the landowner's building need not—and, in view of the evidence presented, cannot—be determined in the case at bar.*

Appeal from Ingham, Marvin J. Salmon, J. Submitted Division 2 April 11, 1973, at Lansing. (Docket No. 14754.) Decided August 29, 1973.

Complaint by the City of Mason against William

Reference for Points in Headnotes
[1, 2] 58 Am Jur 2d, Nuisances §§ 106, 142.

G. Buchman, Janet R. Buchman and others for abatement of a public nuisance and for an assessment of the costs of the abatement. Judgment for plaintiff for abatement and for defendants for the costs of abatement. Plaintiff appeals. Affirmed.

*John P. O'Brien,* for plaintiff.

*Kelley & Fagan,* for defendants Buchman.

Before: FITZGERALD, P. J., and J. H. GILLIS and ADAMS,* JJ.

J. H. GILLIS, J. On May 7, 1968, in the city of Mason, Lawrence Barton, a contractor, was excavating for a new building on a vacant lot immediately east of defendants' building. The excavation was almost completed when, at about 11:30 a.m., a portion of the basement foundation of defendants' building gave way, involving a section of the footing under the southeast corner of the building estimated at from 6 to 8 feet deep and 5 to 16 feet in length. At 11:41 a.m., a section of the southeast brick wall above the footing fell and large cracks developed along the upper front story and laterally along the east side of the building. Between 12 and 12:30 p.m., Mason Police Chief Thomas Stoltz expressed concern to Barton that something should be done that day about the loose bricks on the southeast corner. Both Barton and Mr. Buchman, the owner, agreed that the condition of the southeast wall was potentially dangerous.

It is disputed as to what happened at about 1:45 to 2 p.m. when Barton stationed his backhoe operator before the building. Buchman claims he believed that Barton was just going to reach up with

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the backhoe to take off some loose bricks. Barton asserts that he received what he assumed was a direct order from Chief Stoltz to tear the building down. In any event, the backhoe operator knocked in the entire front and a portion of one side wall of the building.

On July 3, 1968, the city notified defendants to remove the building because it constituted a public hazard and a nuisance. Defendants responded that they were financially unable to do so and that they were also unable to arrive at a settlement with the parties responsible for the damage.

The City of Mason filed this action to have the partially collapsed building declared a nuisance and a public hazard, for an order for demolition of the building, and for a determination that defendants be assessed the costs of demolition. Circuit Judge Sam Street Hughes found the building to be a public nuisance and ordered it demolished. The findings of Judge Hughes are not contested.

Later, after a nonjury trial before Circuit Judge Marvin J. Salmon regarding assessment of the costs of demolition carried out by the city, Judge Salmon found that the city was at least partly responsible for the collapse of the building. He determined that Chief Stoltz, acting with apparent authority, issued the order which "touched off" events resulting in the building being so damaged as to become a nuisance and a hazard. The judge concluded that defendants were in no way responsible for a situation "that was just pushed on them". Finding defendants blameless, he concluded that they should not be required to pay to abate the nuisance. This appeal has been taken from the judgment of no cause of action entered in defendants' favor and presents for our resolution the question of whether defendants must reim-

burse plaintiff for expenses incurred in razing defendants' building.

The Mason city charter specifies that an action will lie for the abatement of a public nuisance and for the recovery of the costs of abatement from the landowner if, as in this case, the city finds it necessary to proceed with the abatement. See also 6 McQuillin, Municipal Corporations (3d ed), § 24.79, p 638–641; 7 McQuillin, Municipal Corporations (3d ed), § 24.561, p 596; 66 CJS, Nuisances, § 138, p 945. No question is raised as to the reasonableness of the costs which were incurred to abate the nuisance.

However, it is well established by ancient precedent that a city may not charge an innocent landowner for the cost of abatement of a nuisance the city has created. *City of Hannibal v Richards,* 82 Mo 330 (1884); *Weeks v Milwaukee,* 10 Wis 242 (1860); *Patrick v Omaha,* 1 Neb (unofficial) 250; 95 NW 477 (1901); *Lasbury v McCague,* 56 Neb 220; 76 NW 862 (1898); see also 6 McQuillin, Municipal Corporations (3d ed), § 24.62, pp 611–612; 62 CJS, Municipal Corporations, § 281(d)(1), p 635. The finding by the trial judge that the city, through Chief Stoltz, "touched off" the events resulting in the creation of a nuisance for which the landowners were blameless, precludes recovery by the city.

To deny application of that doctrine would require the innocent landowners to pay a judgment they ought not to and then duplicate their evidence in a separate lawsuit the outcome of which is not certain. We see no reason why the Buchmans cannot assert their innocence in this case.

Affirmed. Costs to appellees.

Fitzgerald, P. J., concurred.

Adams, J. *(dissenting).* I do not disagree with the

cases cited by Judge Gillis. However, none of them takes into account the peculiar situation we have in this case where, as a result of a prior trial judge's limitation upon third-party actions, two suits are pending: 1) the present case in which the issue is abatement of a public nuisance;[1] and 2) an action by the Buchmans against the City of Mason and others which involves the issue of damages to the Buchmans caused by the alleged negligence of the city and others.

An examination of the cases cited by Judge Gillis reveals that they all concern a situation in which the city is the sole purported tort-feasor.

In *City of Hannibal v Richards,* 82 Mo 330, 336 (1884), the city constructed an embankment which prevented the fall of water from defendant's lots "which, it is alleged injuriously affected the health of the city. * * * Now, we are asked to hold * * * that *the city may create a nuisance* upon the lot of an individual and then have it abated at his expense, if he refuse to do it when ordered. * * * The city cannot create a nuisance upon the property of a citizen and compel him to abate it." (Emphasis added.)

In *Weeks v Milwaukee,* 10 Wis 242, 269 (1860), the Court said:

"I am also of the opinion that the tax assessed against the plaintiff's lots to abate a nuisance, which, it appears, *was created entirely by the act of the city,* in so constructing a street as to cause the water to flow and remain upon the lots, which it would not otherwise have done, is illegal. I cannot recognize the right of a corporation to create a nuisance on the lot of an indi-

---

[1] The trial judge in the instant case erroneously attempted to determine the responsibility of the city in creating the nuisance. However, this is an issue which can only be adjudicated properly in the pending action by the Buchmans against the city and others.

vidual. But to create the nuisance, and then tax him to abate it, is a double wrong." (Emphasis added.)

*Patrick v Omaha,* 1 Neb (unofficial) 250, 251; 95 NW 477 (1901), was an action to enjoin collecting special assessments. Headnote 4 reads in part:

"[C]ollection of a tax, properly assessed to reimburse the city for the expense of filling such lots to abate a nuisance caused by stagnant water thereon, will not be enjoined when it appears that the owner, after due notice, has failed to so abate such nuisance."

In that case, a sewer was found to have been properly constructed by the city. The report states (1 Neb [unofficial] 254–255; 95 NW 479):

"The complaint of plaintiffs is that the negligence of the city caused the water to collect on the lots * * * . But the city was not negligent; on the other hand the work was properly done and the plaintiffs were entitled to all damages necessarily caused by a proper grading of the street * * * . The city did not, therefore, cause the nuisance."

The special assessment was held to be collectible.

In *Lasbury v McCague,* 56 Neb 220, 226; 76 NW 862, 864 (1898), the city was found to be responsible for creating a nuisance by grading a street so as to cause surface water to back up on the owner's property and become stagnant. The Court said:

"The doctrine that a municipal corporation *which has created a nuisance* upon the lot of an individual cannot then assess the costs of abating the same against the property, is sustainable upon the plainest principles of equity, and is fortified by authority." (Emphasis added.)

Finally, 6 McQuillin, Municipal Corporations (3d ed), § 24.62, pp 611–612, reads as follows:

"A municipal corporation no more than any individual or private corporation can maintain or cause a nuisance, and the same remedies exist, generally speaking, against a nuisance arising from municipal action as in other cases. * * * Nor can a city cause or create a nuisance on one's property and then abate it at his expense or require him to abate it."

In *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 636; 178 NW2d 476, 480 (1970), the Michigan Supreme Court had occasion to consider the distinction between nuisance and negligence. It was pointed out that there is some confusion as to the nature of a nuisance, particularly one arising out of tortious conduct. The Court concluded:

"Primarily, nuisance is a condition. *Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition.* Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangerous, offensive, or hazardous condition even with the best of care. *Bowman v Humphrey,* 132 Iowa 234; 109 NW 714 (1906)." (Emphasis added.)

The present case is another example of the difficulty the courts have had in distinguishing between negligence and nuisance when tortious conduct results in the creation of a nuisance. This may not be of much consequence in situations such as those existing in the cases cited by Judge Gillis, where the city was the sole purported tortfeasor, but in the present case the city's negligence, if any, does not appear to have been the primary cause creating the nuisance. However, the parties responsible for the damage to defendants' building need not—and, in view of the evidence presented here, cannot—be determined in the case at bar. Whether the city, the contractor, the owners of the adjacent vacant property, or other par-

ties are responsible must be left for determination in the currently pending suit by the Buchmans for damages arising out of the destruction of their building. Such damages would not be limited to the cost of demolition, even though such cost would constitute a portion of the damages suffered by defendants.

In the instant case we are concerned only with the abatement of a public nuisance. No question is raised as to the reasonableness of the costs which were incurred to abate the nuisance.

I would remand to the circuit court for entry of a judgment in favor of the City of Mason. Costs to plaintiff.