CONTINENTAL PAPER & SUPPLY CO, INC v CITY OF DETROIT

Docket No. 141370. Submitted January 20, 1994, at Detroit. Decided May 17, 1994, at 9:40 A.M. Leave to appeal sought.

Continental Paper & Supply Company, Inc., and its insurer, American Automobile Insurance Company, brought an action in the Court of Claims against the State of Michigan and a separate action in the Wayne Circuit Court against Detroit Metro Wrecking, Clara Berger and Victor Bizer, and the City of Detroit, seeking recovery for damages to a building owned by Continental and insured by American resulting from a fire that spread from an adjacent abandoned commercial building. The actions were consolidated, and all of the defendants except the city were dismissed by stipulation. The action against the city, based on the theory of trespass-nuisance, proceeded to trial before Marvin R. Stempien, J., and resulted in a verdict for the plaintiffs. The city appealed.

The Court of Appeals *held:*

1. The proofs presented by the plaintiffs relating to the inspection of the abandoned building and the actions undertaken by the city to have the building razed were sufficient to establish that the city had control over the building at the time of the fire even though the city did not have title to the premises. The proofs showing that the city was aware that combustible materials were on the premises and that the building was unoccupied and unsecured were sufficient to establish the city's failure to take immediate measures necessary to minimize the danger of fire and, accordingly, that the building constituted a nuisance.

2. Because liability under the theory of trespass-nuisance arose, in part, out of the city's permitting the building to continue to be a fire hazard because of the ease of access to the building, the city cannot escape liability on the basis that there was an intervening cause, an arsonist. It was the easy access to the vacant building by such persons that, in part, made the building a fire hazard and a nuisance.

Affirmed.

*Clausen Miller Gorman Caffrey & Witous, P.C.*

(by *James T. Ferrini, Jeffrey J. Asperger, Joseph J. Janatka,* and *Edward M. Kay*), and *Robert H. Harkness,* for the plaintiffs.

*Alberta P. Whitfield* and *Barbara A. Wynder,* for the defendant.

Before: JANSEN, P.J., and McDONALD and G. M. HOCKING,* JJ.

PER CURIAM. The City of Detroit appeals from a judgment in favor of plaintiffs for $2,986,000 entered on a jury verdict in this trespass-nuisance action. We affirm.

This case involves the fire destruction of a premises known as 4584 Jeffries. Continental Paper and Supply Company and its insurer commenced an action on February 17, 1988, in the Court of Claims and a separate action on February 15, 1988, in the Wayne Circuit Court.

The complaint in the action in the Court of Claims alleged that the State of Michigan was the legal titleholder of 4584 Jeffries and that it intentionally had created a nuisance by allowing the property to remain vacant, unoccupied, unsecured, and a fire hazard open to trespassers and vandals. Plaintiffs sought recovery for damages to the adjacent premises owned by Continental Paper caused by the nuisance, specifically, a fire on March 12, 1987, at 4584 Jeffries, which spread to Continental's property. In an amended complaint, filed July 6, 1988, plaintiffs' theory of liability was labeled "trespass nuisance."

The defendants in the Wayne Circuit Court case were Detroit Metro Wrecking, a company allegedly awarded a contract to demolish the structure at 4584 Jeffries, Clara Berger and Victor Bizer, who

---

* Circuit judge, sitting on the Court of Appeals by assignment.

allegedly owned and abandoned 4584 Jeffries, and the City of Detroit. As with the state claim, the original claim against the City of Detroit was based on an intentional nuisance theory. The city's responsibility for the nuisance was based on allegations that it exercised control and jurisdiction over 4584 Jeffries through its efforts before the fire to condemn the property. An amended complaint, filed on May 18, 1988, labeled the theory of liability as "trespass nuisance."

The Court of Claims and the Wayne Circuit Court cases were consolidated, and all of the defendants, except the City of Detroit (hereinafter defendant), were dismissed pursuant to stipulation. Following various pretrial motions, the case proceeded to trial and resulted in the judgment from which defendant now appeals.

Given the significance of the outcome of this matter, we find the quality of defendant's brief appalling. Defendant has not only failed to provide this Court with several relevant transcripts but, contrary to MCR 7.212(C)(5) and (6), defendant fails throughout the entirety of its brief to provide citations to the record in support of both asserted facts and alleged errors. Moreover, the majority of defendant's issues are supported by little or no analysis and are not supported by authority. *Community Nat'l Bank of Pontiac v Michigan Basic Property Ins Ass'n,* 159 Mich App 510; 407 NW2d 31 (1987). Thus, if not for the significance of the "control" issue raised herein, we would strike defendant's brief and decline to address the appeal. However, because the question regarding defendant's liability is significant and likely to recur, we will address defendant's contention that it can not be found liable under a trespass-nuisance theory.

Although defendant's brief states plaintiff failed

to plead sufficiently or to establish factually a nuisance exception to governmental immunity, defendant has failed to indicate, and we are unable to locate, anywhere in the record where the trial court addressed the sufficiency of plaintiffs' pleadings. Moreover, defendant fails to discuss the substance of plaintiffs' pleadings in its brief on appeal. We, therefore, will limit our analysis of the issue to whether plaintiffs submitted sufficient evidence at trial to support the jury's finding of defendant's liability for trespass-nuisance.

A trespass-nuisance exception to governmental immunity was unanimously recognized in *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139, 169; 422 NW2d 205 (1988), which defined trespass-nuisance as

> trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents and resulting in personal or property damage. The elements may be summarized as condition (nuisance or trespass); cause (physical intrusion); and causation or control (by government). See also *Kuriakuz v West Bloomfield Twp,* 196 Mich App 175, 176-177; 492 NW2d 757 (1992).

At issue here is the element of control.[1] Defendant's argument appears to be that because it did not possess title to the property at the time of the fire, it can not be found liable under a trespass-nuisance theory. We find this argument to be without merit. Liability for damage caused by a nuisance may be found where a defendant creates the nuisance, owns or controls the property from

---

[1] Defendant does not challenge the directed verdict granted in favor of plaintiffs with regard to the "condition" element. It is well settled that a fire hazard constitutes a nuisance. *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970).

which the nuisance arose, or employed another to do work knowing the creation of a nuisance is likely. *Stemen v Coffman,* 92 Mich App 595; 285 NW2d 305 (1979).

In this case plaintiffs presented sufficient evidence to support a finding that defendant had sufficient control over the property at the time of the fire. The record reveals the warehouse buildings at 4584 Jeffries were abandoned sometime in 1980 or 1981. Thereafter, the warehouse's condition deteriorated. Several complaints about, and fires occurring in or around the building, led to various inspections of the premises. Inspections were made pursuant to the Detroit Fire Prevention Code, which recognizes that open, vacant, and abandoned buildings present a fire hazard and, thus, requires that persons owning or having charge or control of any vacant building remove combustible waste and refuse and secure all windows, doors, and openings. The Fire Prevention Code also empowers the fire marshal's office to enter and inspect buildings for compliance with fire regulation and to take whatever action is needed to eliminate hazardous conditions.[2] Specifically, § 19-3-20(b)(1) of the Fire Prevention Code states:

> The fire marshal shall have the authority to summarily abate any condition which is in violation of any provision of this article and which presents immediate danger to life.

Inspection of the premises was also conducted through the Detroit Buildings and Safety Depart-

_____

[2] Plaintiffs presented testimony of two city representatives who indicated that pursuant to various provisions of the Fire Prevention Code and the Building Code the city is obligated to remedy known dangerous conditions where, after proper notice, the owners fail to do so.

ment pursuant to the Detroit Building Code. The Building Code is applicable to dangerous buildings and permits the entry onto property to enforce its provisions. The Building Code also makes it unlawful for an owner or his agent to maintain a building in a dangerous or unsafe condition. A hearing may be conducted when it is determined some action is required with respect to a dangerous building.

Here, inspection of the premises revealed the warehouse was vacant and open to trespass. Inside the warehouse both loose and stacked bundles of rags were discovered.[3] There was also equipment and debris scattered throughout the warehouse and evidence of vandalism. After an August 8, 1986, inspection of the premises, initiated by a citizen complaint, a notice of a dangerous building was issued to the owners of record. The notice afforded the opportunity to barricade, rehabilitate, or demolish the warehouse. Because no known owners came forward and the warehouse's condition progressively worsened, notices of lis pendens were sent to persons thought to be owners that proceedings had been commenced by defendant to demolish the unsafe structure and to assess the costs of doing so against the property. After no one appeared at the October 1986 hearing scheduled before a hearing officer with the Dangerous Buildings Office, the matter was referred to the City Council. On December 4, 1986, the City Council voted to demolish the warehouse. Although the council undertook the steps necessary to accomplish the demolition, no measures were taken to secure the property pending its demolition. The matter was referred to defendant's engineering department to obtain bids and to the purchasing

---

[3] Before being abandoned, the premises housed some type of rag recycling business.

department for approval of the bids. Before the March 12, 1987, fire, the City Council voted to approve a bid and award the contract. However, it appears the fire occurred before the contract was actually awarded.

We find this evidence sufficient to allow a jury to determine defendant possessed the requisite "control" over the premises such that defendant could be found liable for failing to abate the nuisance. See *Oxenrider v Gvoic,* 340 Mich 591; 66 NW2d 80 (1954).

Next, defendant appears to argue it can not be held liable because it did not "set in motion" the physical intrusion (the fire) onto plaintiff's property. Defendant's argument is based on the fact that *Hadfield, supra,* p 169, defines a trespass-nuisance, in part, as "trespass . . . caused by a physical intrusion that is set in motion by the government." Thus, defendant argues it can not be held liable because an arsonist was the intervening cause of the instant fire.

We agree with the trial court's position and conclude defendant could be found liable even if an act of God were the source of the fire, because the claim made is that the warehouse was a nuisance precisely because it was a fire hazard. As our Supreme Court stated in *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 638; 178 NW2d 476 (1970), a case of similar facts except action was taken against the state rather than a city:

> It was the very nature of the nuisance involved in this case—a fire hazard—that eventually negligent or lawless acts or sheer chance or an act of God (lightning) would convert the peril to the neighboring land into a destructive force—the hazard—the nuisance took its toll. Damage to plaintiffs flowed from the nuisance and the mere fact that negligence may have existed in a variety of

acts or by inaction by the state during the continuing period of the nuisance will not permit it to escape its liability.

Although the Court in *Buckeye* did not expressly address the concept of legal causation, its rationale supports the view that an intervening event (i.e. arson) will not preclude liability where the intervening event is part of the very nature of the nuisance involved. We conclude, contrary to the defendant's position, that is was not necessary that defendant set the fire to the warehouse in order to be held liable for the fire damage to plaintiff's building. It was sufficient that defendant set in motion the physical intrusion (fire trespassing onto adjoining private property) by failing to abate the nuisance (fire hazard after gaining the requisite control).

The judgment is affirmed.