HINOJOSA v DEPARTMENT OF NATURAL RESOURCES

Docket No. 248185. Submitted August 4, 2004, at Lansing. Decided
September 9, 2004, at 9:05 A.M. Leave to appeal sought.

Sanjuana Hinojosa and Samuel Hinojosa, their daughters Selena and
Corrine Hinojosa, Victor Perez, and the Michigan Basic Property
Insurance Association, a neighbor's subrogee, brought an action in
the Court of Claims against the Department of Natural Resources,
seeking compensation for damages sustained by real properties in
which plaintiffs had interests when a house on a neighboring
parcel acquired by the state through tax delinquency proceedings
burned and the fire spread to the plaintiff's properties. The court,
Thomas L. Brown, J., granted summary disposition for the defen-
dant on plaintiffs' claims that there was an unconstitutional
taking or inverse condemnation, and that the damage was the
result of a trespass-nuisance. The plaintiffs appealed.

The Court of Appeals *held*:

1. *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630 (1970),
was based on law before the current governmental tort immunity
act, and in that case the Supreme Court found there was a
common-law, trespass-nuisance exception to governmental immu-
nity. Since *Buckeye,* MCL 691.1407 has been modified by the
Legislature, and a governmental agency now clearly has immunity
from any tort action except those specifically listed in MCL
691.1401 *et seq.* Const 1963, art 3, § 7. Trespass-nuisance is not
among the specific exceptions to governmental immunity.

2. The trial court correctly ruled that the plaintiffs failed to
state a cause of action for an unconstitutional taking or inverse
condemnation because the complaint did not allege any affirma-
tive action by the state directed at the plaintiffs' properties. The
complaint may have alleged negligent failure to abate a nuisance,
but that is a tort for which MCL 691.1401 *et seq.* do not list an
exception to immunity, so the claim is barred by governmental
immunity. There was no overt action by the government alleged
that was specifically directed toward the plaintiffs' properties that
had the effect of limiting the use of the properties.

Affirmed.

1. GOVERNMENTAL IMMUNITY — EXCEPTIONS — TRESPASS-NUISANCE.

Trespass-nuisance is not among the exceptions to governmental immunity from tort liability (MCL 691.1401 *et seq.*).

2. EMINENT DOMAIN — INVERSE CONDEMNATION.

A plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages; the plaintiff must prove that the government's actions were a substantial cause of the decline of his property's value and also establish that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property.

*Briggs Colegrove, P.C.* (by *Todd E. Briggs* and *Sarah W. Colegrove*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mark V. Schoen*, Assistant Attorney General, for the defendant.

Before: MURRAY, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM. We must decide in this case whether Const 1963, art 10, § 2[1] requires the state to justly compensate neighboring property owners for damage caused by a fire that spread from an abandoned house after the state acquired it through tax delinquency proceedings. We hold that the circumstances do not constitute a "taking" or "inverse condemnation" because the state took no affirmative action toward plaintiffs' properties. At most, it failed to abate a fire-hazard nuisance. *Attorney General v Ankersen*, 148 Mich App 524, 561-562; 385 NW2d 658 (1986). Accordingly, we affirm the trial court's grant of summary disposition for defendant. MCR 2.116(C)(8).

---

[1] "Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record." Const 1963, art 10, § 2.

I. FACTUAL BACKGROUND

The state acquired property at 2015 Lansing Street in Detroit on May 2, 2000, after no one redeemed it following a tax sale.[2] Fire damaged the house on the property on January 1, 2001. Subsequently, inspectors for the city of Detroit determined the house violated the city's building code; consequently, the city's Buildings and Engineering Department deemed the house a "dangerous building." After the January fire, vagrants frequented the house, warming themselves by burning wood siding in a hole in the floor of the structure. On September 18, 2001, the city filed a lis pendens giving notice that the property would "be demolished as an unsafe structure."

Plaintiffs Sanjuana Hinojosa and her husband, Samuel Hinojosa, owned a neighboring home, which they rented to their two daughters, Selena and Corrine, and Victor Perez, all of whom are plaintiffs in this case. Rogelio Plascencia owned another neighboring home insured by plaintiff Michigan Basic Property Insurance Association (MBPIA). According to affidavits signed by Mr. and Mrs. Hinojosa, they contacted city officials several times between January 31, 2001, and March 19, 2002, regarding the condition of 2015 Lansing Street. The Hinojosas also averred that a "Dangerous Building Notice" was posted at the property on January 31, 2001.

On March 19, 2002, the house at 2015 Lansing Street burned again. This fire also damaged the homes of the Hinojosas and Plascencia. Plaintiff MBPIA asserts subrogation rights to the extent it paid fire damage claims of Plascencia. The Hinojosas' home was not insured.

---

[2] The state treasurer's deed, acknowledged on January 5, 2001, quitclaimed the property to the "State of Michigan, whose address is, Department of Natural Resources, Real Estate Division."

Plaintiffs filed a two-count complaint, alleging trespass-nuisance and an unconstitutional taking or inverse condemnation. Plaintiffs subsequently moved for summary disposition pursuant to MCR 2.116(C)(9) and (10). Defendant also moved for summary disposition on the basis of MCR 2.116(C)(7), (8), and (I)(2). The trial judge, sitting as the Court of Claims, heard arguments of counsel on April 2, 2003. The parties agreed that because plaintiffs' complaint was filed on July 29, 2002, plaintiffs' trespass-nuisance tort claim was barred on the basis of governmental immunity. MCL 691.1407; *Pohutski v City of Allen Park*, 465 Mich 675, 690, 699; 641 NW2d 219 (2002). Regarding plaintiffs' constitutional claim, the trial court agreed with the state that plaintiffs' reliance on *Buckeye Union Fire Ins Co v Michigan*, 383 Mich 630; 178 NW2d 476 (1970), for the proposition that trespass-nuisance is a constitutional tort was misplaced. Further, because plaintiffs' complaint did not allege "any overt activity which interfered with the Plaintiffs['] enjoyment of their property," the court determined that plaintiffs had not alleged a "taking" of property that required just compensation. The parties also stipulated that no facts existed that would support amending plaintiffs' complaint to allege an overt act by the state. MCR 2.116(I)(5). Accordingly, the trial court entered its order granting defendant's motion to dismiss. Plaintiffs appeal by right.

## II. STANDARDS OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). "MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plain-

tiff has stated a claim on which relief may be granted."
*Id.* The trial and reviewing courts must accept all
well-pleaded factual allegations as true, construing
them in a light most favorable to the nonmoving party.
*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817
(1999). The motion may be granted only "where the
claims are so clearly unenforceable as a matter of law
that no factual development could possibly justify re-
covery." *Wade v Dep't of Corrections*, 439 Mich 158, 163;
483 NW2d 26 (1992).

We review de novo the trial court's decision on a
motion for summary disposition under MCR
2.116(C)(7) to determine if the moving party was en-
titled to judgment as a matter of law. *Lavey v Mills*, 248
Mich App 244, 249; 639 NW2d 261 (2001). A court must
consider all submitted documentary evidence in a light
most favorable to the nonmoving party. *Id* at 250.
Further, a court must accept as true the contents of the
complaint unless specifically contradicted by submitted
documentary evidence. *Id.*; *Maiden, supra* at 119.

We review constitutional questions de novo. *Co Rd
Ass'n v Governor*, 260 Mich App 299, 303; 677 NW2d
340 (2004); *Wayne Co Chief Executive v Governor*, 230
Mich App 258, 263; 583 NW2d 512 (1998).

### III. ANALYSIS

#### A. *BUCKEYE UNION FIRE INS CO v MICHIGAN*

We agree with the trial court and defendant that
*Buckeye,* which considered a factual situation similar to
that of the case at bar, does not control the constitu-
tional question presented here. In *Buckeye,* the plain-
tiffs contended unoccupied industrial property the state
acquired through tax delinquency proceedings was
readily accessible to vandals and trespassers, creating a

fire hazard that resulted in fire damage to neighboring property. *Buckeye, supra* at 632. Our Supreme Court determined that the state was not protected by sovereign immunity against the plaintiffs' nuisance claim. *Id.* at 644.

In the first section of its opinion in *Buckeye,* the Court emphasized that the state's liability was predicated on maintaining a nuisance, observing:

> It was in the very nature of the nuisance involved in this case—a fire hazard—the eventually negligent or lawless acts or sheer chance or an act of God (lightning) would convert the peril to the neighboring land into a destructive force—the hazard—the nuisance took its toll. Damage to plaintiffs flowed from the nuisance and the mere fact that negligence may have existed in a variety of acts or by inaction by the state during the continuing period of the nuisance will not permit it to escape its liability. [*Id.* at 638.]

In the second section of its decision, the *Buckeye* Court held that the fact that the property could still be redeemed on the date of the fire did not affect the state's liability. *Id.* at 638-640.

In the final section of its opinion, the *Buckeye* Court addressed the issue of sovereign immunity. *Id.* at 640-644. The Court reasoned that immunity would be improperly applied in light of the 1908 constitutional prohibition against taking property for public use without just compensation at the time of the fire.[3] *Id.,* at 641-643. The Court quoted *Thornburg v Port of Portland,* 233 Or 178, 192; 376 P2d 100 (1962), for the proposition that " 'a taking occurs whenever govern-

---

[3] "Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law." Const 1908, art 13, § 1.

ment acts in such a way as substantially to deprive an owner of the useful possession of that which he owns, either by repeated trespasses or by repeated nontrespassory invasions called nuisance.' " *Buckeye, supra* at 643 (internal punctuation omitted). The *Buckeye* Court concluded that the "fire hazard which the state permitted to continue was a nuisance which directly interfered with the property of plaintiffs' subrogors and ultimately led to its damage." *Id.* at 643. Thus, the *Buckeye* Court held: "There is no sovereign immunity applicable to a situation of nuisance as we have in this case." *Id.* at 644.

But we must view the *Buckeye* decision in its historical perspective. Before August 1, 1970, appellate decisions governed sovereign immunity. *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 607; 363 NW2d 641 (1984), citing *Pittman v City of Taylor*, 398 Mich 41, 46; 247 NW2d 512 (1976) (KAVANAGH, C.J.). Further, because the fire at issue in *Buckeye* occurred before the adoption of Michigan's current Constitution, the Court applied Michigan's 1908 Constitution to hold that common-law sovereign immunity did not shield the state from tort liability for nuisance. Thus, neither statutory immunity, MCL 691.1407, nor Const 1963, art 10, § 2, was at issue in *Buckeye*. The liability imposed on the state was for the tort of nuisance, not to justly compensate an owner for the taking of private property for public use. Nevertheless, the *Buckeye* Court relied on the Taking Clause as its rationale for concluding that common-law sovereign immunity did not shield the state from liability for nuisance.

Our Supreme Court later would address "whether, in light of the governmental tort liability act[4] and *Ross*,

---

[4] MCL 691.1401 *et seq.*, 1964 PA 170, in particular MCL 691.1407, governmental immunity, as amended by 1970 PA 155 to be effective

*any* common-law tort-based exception to governmental immunity may be recognized." *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 145; 422 NW2d 205 (1988) (opinion by BRICKLEY, J.) (emphasis in original), overruled by *Pohutski*. Our Supreme Court in *Ross, supra* at 618, held that statutory governmental immunity is to be broadly construed, its exceptions narrowly. See *Horace v City of Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998) (citations omitted), in which the Court noted, "It is now well established, as the result of this Court's seminal governmental immunity opinion in *Ross . . .* , and its progeny, that the term 'governmental function' is to be broadly construed and the statutory exceptions thereto . . . are to be narrowly construed."

The heart of the act conferring governmental immunity for tort liability is found in § 7 of the statute, which provided when considered by the *Hadfield* Court:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [*Hadfield, supra* at 146, quoting MCL 691.1407.][5]

---

August 1, 1970. The 1970 amendment cured a constitutional title-object defect, Const 1963, art 4, § 24, as determined in *Maki v East Tawas*, 385 Mich 151; 188 NW2d 593 (1971). See *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 147 n 2; 422 NW2d 205 (1988), and *Ross, supra* at 606-607.

[5] This provision is now subsection 1 of § 7 of the act: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in

In parsing § 7, the Court recognized that "[t]here is no doubt that nuisance is a tort and that liability for nuisance would be within the scope of statutory governmental immunity as expressed in the first sentence of § 7." *Hadfield, supra* at 147. But the Court found that the second sentence of § 7 not only incorporated common-law immunity, but also judicially created exceptions, including nuisance. *Id.* at 147-148. Accordingly, the *Hadfield* Court held "a limited trespass-nuisance exception to governmental immunity" continued to exist consistent with case law predating statutory immunity, defining "trespass-nuisance" as "a direct trespass upon, or the interference with the use or enjoyment of, land that results from a physical intrusion caused by, or under the control of, a governmental entity." *Id.* at 145. The Court described the elements of this exception to governmental tort immunity as: "condition (nuisance or trespass); cause (physical intrusion); and causation or control (by government)." *Id.* at 169.

The *Hadfield* Court justified its holding with the close association in case law between trespass-nuisance as an exception to sovereign immunity on the one hand and the constitutional prohibition against taking private property for public use on the other hand. *Id.* at 156-169.[6] Indeed, the *Hadfield* Court opined that "the 'Taking' Clause of the constitution formed the basis of the trespass-nuisance exception as it evolved prior to 1964." *Id.* at 165. Regarding *Buckeye*, the *Hadfield* Court observed that, "although the plaintiff had alleged nuisance and this Court found nuisance, the holding was premised on the fact that an unconstitutional

---

this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed." MCL 691.1407(1).

[6] The Court surveyed cases from *Pennoyer v Saginaw*, 8 Mich 534 (1860), through the Court's 1970 decision in *Buckeye*.

taking had occurred," and that the *Buckeye* Court treated the two causes of action as synonymous. *Id.* at 168. But the Court also noted that "[d]irect reliance on [the Taking Clause] should not be confused with the assertion of the trespass-nuisance exception . . . [because] other trespass-nuisance cases that cited the taking provision of the constitution merely employed that provision as a rationale for the judicially created rule that would impose liability in a tort setting involving governmental immunity." *Id.* at 165 n 10. Our Supreme Court later would again emphasize that a constitutional taking and the tort of trespass-nuisance are distinct actions. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 206-207; 521 NW2d 499 (1994). In sum, although judicial decisions have closely associated trespass-nuisance with the Taking Clause, it remains a tort.

The two causes of action are differentiated by their sources and by the damages recoverable. The Legislature has the constitutional authority[7] to modify or abolish the common-law tort of trespass-nuisance. See *Phillips v Mirac, Inc*, 470 Mich 415, 430; 685 NW2d 174 (2004), citing *Donajkowski v Alpena Power Co*, 460 Mich 243, 256 n 14; 596 NW2d 574 (1999). But an action that establishes an unconstitutional taking may not be limited except as provided by the Constitution because of the preeminence of the Constitution. See, e.g., *Smith v Dep't of Pub Health*, 428 Mich 540, 544, 641; 410 NW2d 749 (1987); *Burdette v Michigan*, 166 Mich App 406, 408; 421 NW2d 185 (1988) ("Governmental immunity is not available in a state court action

---

[7] Const 1963, art 3, § 7 provides, "The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."

where it is alleged that the state has violated a right conferred by the Michigan Constitution."). Thus, the available damages in a "taking" cause of action are limited to "just compensation." See *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 374-379; 663 NW2d 436 (2003) (discussing the historical development of the term "just compensation" and construing it as "the proper amount of compensation for property [that] takes into account all factors relevant to market value").

In the case at bar, the trial court correctly dismissed plaintiffs' tort claim of trespass-nuisance because our Supreme Court in *Pohutski* overruled *Hadfield,* finding that "the plain language of the governmental tort liability act does not contain a trespass-nuisance exception to governmental immunity." *Pohutski, supra* at 689-690. But the majority in *Pohutski* pointedly declined to address whether facts that previously might have supported liability for a trespass-nuisance could establish an unconstitutional taking. The *Pohutski* Court stated:

> The parties have addressed whether trespass nuisance is not a tort within the meaning of the governmental immunity statute, but rather an unconstitutional taking of property that violates Const 1963, art 10, § 2. The trial courts in these cases have yet to address the taking claims. Therefore, we decline to discuss those claims at this time. [*Id.* at 699.]

Thus, although presented the opportunity, our Supreme Court declined to adopt Justice KELLY's views that *Buckeye* "acknowledged that the trespass-nuisance exception has a constitutional basis," and that "[g]overnmental immunity is not a defense to a constitutional tort claim, hence not to a claim based on trespass-nuisance." *Pohutski, supra* at 709 (KELLY, J., dissent-

ing), citing *Thom v State Hwy Comm'r*, 376 Mich 608, 628; 138 NW2d 322 (1965). We conclude, therefore, that the issue whether trespass-nuisance as alleged here may constitute a constitutional taking was not decided in *Buckeye*. Hence, we must consider other decisions addressing the application of the Taking Clause.

### B. THE TAKING CLAUSE

We conclude that the trial court correctly found that plaintiffs' failed to state a cause of action for an unconstitutional "taking" or "inverse condemnation" because the complaint alleged no affirmative action by the state directed at plaintiffs' properties, but, at most, alleged negligent failure to abate a nuisance. The latter claim is a tort for which the statute provides no exception and the claim is barred by governmental immunity.

What governmental action constitutes a "taking" is not narrowly construed, nor does it require an actual physical invasion of the property. *Detroit Bd of Ed v Clarke*, 89 Mich App 504, 508; 280 NW2d 574 (1979), citing *Thom, supra* at 613-614. No precise formula exists. *Clarke, supra*. Pertinent factors include whether "the governmental entity abused its exercise of legitimate eminent domain power to plaintiff's detriment." *Heinrich v Detroit*, 90 Mich App 692, 698; 282 NW2d 448 (1979). Further, a plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages. *Id.* at 699. A plaintiff alleging a de facto taking or inverse condemnation must prove "that the government's actions were a *substantial* cause of the decline of his property's value" and also "establish the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property." *Id.* at 700 (emphasis in original). See, also, *Charles Murphy, MD,*

*PC v Detroit*, 201 Mich App 54, 56; 506 NW2d 5 (1993) ("While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property.").

In *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 130; 680 NW2d 485 (2004), this Court again affirmed the two elements necessary for proving an inverse condemnation case. The *Merkur* Court, which affirmed a $7 million jury award, opined that a plaintiff in such a case "has the burden of proving . . . that the government's actions were a substantial cause of the decline of its property" and "must also establish that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property." *Id*.

We find this Court's decision in *Ankersen* instructive in applying these principles to the case at bar. In *Ankersen*, the Attorney General sought to abate a nuisance: the improper storage of hazardous chemicals that created a fire hazard. The "innocent" landowners brought a counterclaim against the Director of the Department of Natural Resources and the Natural Resources Commission, alleging that the "counterdefendants participated in the creation of a nuisance and that their actions amounted to an uncompensated taking." *Ankersen, supra* at 532, 558. The Court stated the two elements of an inverse condemnation claim are "(1) 'that the government's actions were a *substantial* cause of the decline of his property's value,' and (2) 'that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property.' " *Ankersen, supra* at 561, quoting *Heinrich, supra* at 700. First, the *Ankersen* Court concluded that the state's action of licensing a person or corporation to conduct a

private business "cannot be regarded as a taking of private property by the government for public use." *Ankersen, supra* at 561. The Court continued, "[s]econdly, the state's alleged misfeasance in licensing and supervising the operation does not constitute 'affirmative actions directly aimed at the property'. Thus, . . . the inaction and omissions by the state cannot be found to constitute a 'taking'." *Id.* at 562.

### C. CONCLUSION

When we apply the settled principles of required proof to establish a de facto taking or inverse condemnation to the present case, we conclude that the trial court correctly ruled that plaintiffs' constitutional claim fails because plaintiffs did not allege any overt action by the state directed at plaintiffs' properties. In fact, plaintiffs admitted that no facts existed that would support amending the complaint to allege the necessary overt act. We therefore hold that plaintiffs' failed to allege a "taking" or "inverse condemnation" for which just compensation is required by Const 1963, art 10, § 2. Because plaintiffs failed to allege that the state took affirmative action directed at plaintiffs' properties, which was a substantial cause of the decline of their property's value, plaintiffs "failed to state a claim on which relief can be granted." MCR 2.116(C)(8). Accordingly, we affirm.