*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SUETTA SMITH, as Personal Representative of
the Estate of Brenda Sue Smith, Deceased,

*Plaintiff-Appellee*,

     *v.*

COUNTY OF LENAWEE; LAWRENCE
RICHARDSON, JR., Sheriff; PAUL DYE, Sgt.; J.
CRAIG, Sgt.; WENDY VANDERPOOL, Officer;
BERNICE BAKER; ADAM ONDROVICK, Officer;
JEFFREY STICKNEY, D.O.,

     *Defendants,*

and

THOMAS MOORE, Parole Agent,

     *Defendant-Appellant.*

No. 09-1703

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-10648—David M. Lawson, District Judge.

Argued: March 2, 2010

Decided and Filed: April 13, 2010

Before: MARTIN, ROGERS, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Kevin R. Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY
GENERAL, Lansing, Michigan, for Appellant. Kenneth David Finegood, KENNETH D.
FINEGOOD, P.L.C., Southfield, Michigan, for Appellee. **ON BRIEF:** Kevin R.
Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan,
for Appellant. Kenneth David Finegood, KENNETH D. FINEGOOD, P.L.C., Southfield,
Michigan, for Appellee.

————————————

**OPINION**

————————————

McKEAGUE, Circuit Judge.  This appeal comes to us as part of a larger lawsuit filed against Lenawee County, Michigan and various agents of the Lenawee County Sheriff's Department and Michigan Department of Corrections.  The Estate of Brenda Smith, through personal representative Suetta Smith, filed suit after Brenda Smith died while in the custody of the Lenawee County Sheriff's Department.  The sole issue pending before this panel is whether defendant Thomas Moore, Parole Agent for the Michigan Department of Corrections, is entitled to governmental immunity on the state-law gross negligence claim.  Because Moore's actions were not the proximate cause of Brenda Smith's death, he is entitled to governmental immunity.  We therefore REVERSE the order of the district court denying Moore's motion for summary judgment on the gross negligence claim.

## I. Background

The facts surrounding Brenda Smith's ("Smith") death reveal that a senseless tragedy occurred at the Lenawee County jail.  Smith was booked at the jail on a parole detainer on the evening of April 27, 2007.  Soon after booking, she began displaying signs of delirium tremens ("DT"), which is a life-threatening condition caused by acute alcohol withdrawal.  Her symptoms included paranoid behavior, hearing nonexistent noises, and talking with relatives who were not present.  Jail officials recognized Smith's symptoms as being attributable to DT and implemented precautions for her protection.  Specifically, officials moved Smith to an observation cell on the night of April 28.  After her condition worsened throughout the night, officers contacted Dr. Jeffrey Stickney, an on-call physician for the jail.  Dr. Stickney advised jail officers to keep Smith safe and to monitor her, but he did not recommend any further treatment because he believed Smith's medications provided adequate treatment for her condition.

Smith's condition deteriorated further throughout the night of April 29.  The Death Investigation Report describes Smith's behavior as being "more physical, beating on the door, screaming, [and] hitting the walls."  Jail officers moved Smith to a padded cell for her protection.  By the next morning, officers noted that Smith had become more settled.  Yet

the officers also recorded that Smith continued to fall around her cell, crawl, and reach for objects on the wall. Parole Agent Thomas Moore arrived at the jail at approximately 9:18 that morning to serve Smith a Notice of Parole Violation Charges in preparation to transport her out of the Lenawee County jail to Washtenaw County. Moore was employed by the Michigan Department of Corrections, not the Lenawee County Sheriff's Department, and he was at the jail for the sole purpose of serving Smith. When Moore arrived, he was notified by jail officials that Smith was incoherent and unaware of her identity. Moore then observed Smith in the padded observation cell for a period of minutes. Moore noted that Smith was moaning loudly with her face down on the bench. After deciding that Smith was unable to be transported or served, Moore left the jail without taking further action.

The jail's video recording shows that Brenda Smith's last movements occurred at 9:19 a.m., which coincided with the time that Moore stated he had observed her. Jail officials did not check Smith again until 9:50 a.m., at which time an official summoned for help because Smith was unresponsive. Paramedics arrived within moments and transported Smith to an area hospital. She died within a short time after arriving at the hospital.

Suetta Smith ("Plaintiff"), Brenda Smith's sister and personal representative of the Estate, filed suit against Lenawee County, a number of Sergeants and Officers with the Lenawee County Sheriff's Department, on-call physician Dr. Stickney, and Parole Agent Thomas Moore. The suit contained a federal claim, brought under 42 U.S.C. § 1983 for violation of Smith's Eighth and Fourteenth Amendment rights, and a state claim, brought under Michigan law for gross negligence. In lieu of an answer, Moore filed a motion for summary judgment under Federal Rule of Civil Procedure 56(b), claiming that he was entitled to qualified immunity as to the federal claim and governmental immunity as to the state claim. In response to Moore's motion, Plaintiff argued that summary judgment was inappropriate because discovery had not yet commenced and because Moore was the last person to observe Smith alive. Plaintiff's attorney filed a Rule 56(f) affidavit to support the claim that additional discovery was needed. After a hearing on Moore's motion, the district court ruled from the bench, granting Moore qualified immunity on the federal § 1983 claim

but denying governmental immunity on the state gross negligence claim.[1]   The court determined that Plaintiff's Rule 56(f) affidavit was too vague to justify more discovery on the federal claim.  Moore brings this appeal, challenging the denial of governmental immunity.

## II. Jurisdiction

The district court possessed subject matter jurisdiction over Smith's federal claims pursuant to 28 U.S.C. § 1331.  It had supplemental jurisdiction over the gross negligence claim, brought under Michigan law, pursuant to 28 U.S.C. §1367(a) because the gross negligence claim formed part of the same "case or controversy" as the § 1983 claim.  We have appellate jurisdiction over final orders of the district court pursuant to 28 U.S.C. § 1291.  Plaintiff argues that we lack jurisdiction over the district court's denial of governmental immunity on the gross negligence claim because the denial of governmental immunity under Michigan Compiled Laws ("M.C.L.") § 691.1407 does not constitute a "final order."

Prior to the 2002 Amendments to the Michigan Court Rules, this court held in *Walton* that a denial of governmental immunity under M.C.L. § 691.1407 was not a final appealable order.  *See Walton v. City of Southfield*, 995 F.2d 1331, 1344 (6th Cir. 1993) (noting that denial of governmental immunity was not an appealable order under Michigan law because governmental immunity provided immunity from liability, not immunity from suit).  Michigan Court Rule 7.202 was subsequently amended to include an "order denying governmental immunity" as a final order for the purposes of appellate review.  M.C.R. 7.202(6)(a)(v).  In light of this 2002 amendment, we revisited *Walton*'s holding in *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007), and

---

[1]While we recognize that the only issue pending before this court is the denial of state governmental immunity, we think it prudent to comment on the district court's statement that it would "permit the plaintiff, at the appropriate time when sufficient discovery is conducted, to move under Rule 60(b) for relief" from judgment on the grant of qualified immunity.  Our case law unequivocally states that qualified immunity provides immunity from suit, not just immunity from liability.  *See, e.g.*, *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010).  To the extent that the district court still considers Moore a party to discovery on Plaintiff's section 1983 claim (as opposed to merely a third-party witness) or would allow Plaintiff to revive her section 1983 claim against Moore via a Rule 60(b) motion, the district court clearly misunderstands the mandates of qualified immunity.

determined that an order granting or denying governmental immunity under M.C.L. § 691.1407 now constitutes a final order for the purposes of federal appellate review. Since the amendment, this court has consistently followed *Livermore* and has allowed interlocutory appeals to be taken from orders granting or denying governmental immunity under M.C.L. § 691.1407. *See, e.g.*, *Floyd v. City of Detroit*, 518 F.3d 398, 409 (6th Cir. 2008); *Marvin v. City of Taylor*, 509 F.3d 234, 251 (6th Cir. 2007). Plaintiff acknowledges *Livermore* and its progeny, yet she nonetheless argues that *Livermore* was incorrectly decided and requests that we overrule that case to the extent that it allows appeals to be taken from orders granting or denying governmental immunity. Because the case at bar clearly falls within the bounds of our binding precedent, we are not at liberty to revisit *Livermore* as Plaintiff requests.

The district court, however, determined that the case at bar is distinguishable from our above-listed precedents because those cases all involved appeals on federal and state claims, while this appeal involves the state claim only. According to the district court, our precedent in *Walton* dictates the outcome of this case, which means that this court does not have jurisdiction to review Moore's appeal.[2] Order of Nov. 3, 2009, at 6. We do not agree with the district court that this case differs substantively from our binding precedent in *Livermore* and its progeny. While *Livermore* involved both a federal qualified immunity claim and a state governmental immunity claim, nothing in its analysis limits the holding to cases where an appeal from the denial of governmental immunity is coupled with an appeal from a denial of qualified immunity. Indeed, the *Livermore* court analyzed whether it had jurisdiction over the denial of governmental immunity under Michigan law separate and independent from its analysis on whether it had jurisdiction over the denial of qualified immunity. 476 F.3d at 407–08. *Livermore*'s

---

[2]The district court's Order of November 3, 2009 denied Moore's request to stay proceedings in that court pending this appeal. The court reasoned that Moore's appeal had little likelihood of success on the merits because this court likely lacked jurisdiction to hear the appeal.

holding is therefore binding, which means we have appellate jurisdiction over Moore's appeal pursuant to 28 U.S.C. § 1291. *Id.*[3]

### III. Analysis

We review a district court's denial of governmental immunity on a motion for summary judgment de novo. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). In reviewing the district court's decision, we view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant. *Id.* We apply Michigan governmental immunity law and federal procedural law to the issue. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009).

Under Michigan law, government employees are generally immune from tort liability for injury to a person if the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws Ann. § 691.1407(2)(c) (West 2009). The statute defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* at § 691.1407(7)(a). Statutory grants of governmental immunity should be broadly construed, with exceptions construed narrowly. *Hinojosa v. Dep't of Natural Res.*, 688 N.W.2d 550, 554 (Mich. Ct. App. 2004). On appeal, Moore does not challenge whether he acted with gross negligence; rather, he argues that he is entitled to governmental immunity because his conduct was not the proximate cause of Smith's death.

---

[3]Moore also argues that the district court improperly exercised supplemental jurisdiction over the gross negligence claim after dismissing the federal claim. He asks this court to "reverse the district court's decision to exercise supplemental jurisdiction." Because Moore did not raise this issue in the district court, it is not properly before us, and we decline to review it. *See United States v. Nintey-Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (noting that an argument raised for the first time on appeal will not be considered unless a plain miscarriage of justice will result). The issue is also not within the limited scope of our jurisdiction over this interlocutory appeal.

The Michigan Supreme Court has stated that, for the purposes of Michigan's governmental immunity statute, proximate cause means "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000). In using this narrow definition, the court noted that the Michigan Legislature intentionally used the phrase "*the* proximate cause" in the statute, rather than "*a* proximate cause." *Id.* The *Robinson* court overruled prior Michigan court precedent to the extent that the prior decisions interpreted "the proximate cause" to mean anything other than the sole proximate cause. *Id.* at 318. The court went on to hold that police officers were entitled to governmental immunity in a case where a passenger in a vehicle was killed after the vehicle's driver led police on a high-speed chase. *Id.* at 313, 319. According to the *Robinson* court, no reasonable jury could find that the officers' pursuit of the fleeing vehicle was the "one most immediate, efficient, and direct cause of the plaintiffs' injuries" because the actions of the driver who led police on the chase were the most immediate cause of the injuries. *Id.* at 319.

In an unpublished decision, a Michigan appellate court determined that an investigating officer's failure to give an inmate his blood pressure medication was not the proximate cause of the inmate's subsequent death. *Hartzell v. City of Warren*, No. 252458, 2005 WL 1106360 at *16 (Mich. Ct. App. May 10, 2005). The evidence in *Hartzell* indicated that the defendant-officer was not the officer responsible for booking the decedent nor was he the detention officer responsible for the decedent during confinement. *Id.* at *15. While the evidence indicated that the officer's conduct could have been *a cause* of the decedent's death, the officer's conduct was not the one most immediate cause of death because other evidence showed that substandard medical care on the part of the jail's nurse and physician was the most immediate cause of the death. *Id.* at *16.

On the other hand, this court has determined that a nurse was not entitled to summary judgment on the issue of governmental immunity under Michigan's immunity statute where the nurse provided inadequate treatment to an inmate suffering from heat exhaustion. *Dominguez*, 555 F.3d at 546–48, 552–53. The inmate in *Dominguez* had

participated in an outdoor weight-training session prior to becoming ill, and his untreated condition ultimately led to quadriplegia and impaired communication abilities. *Id.* at 548. In denying the nurse's motion for summary judgment, this court reasoned that a reasonable jury could conclude that the nurse's actions were the proximate cause of the inmate's injuries because the inmate's condition continued to deteriorate after the exercise session and the inmate repeatedly sought care from the nurse. *Id.* at 553.

Based on the above case law, we are convinced that Moore's conduct in this case comes closer to those cases where the defendant's actions were not the proximate cause of the injury. While the details of Smith's death are tragic, the facts indicate that Smith was in the custody of Lenawee County jail officials in the hours leading up to her death. The facts also indicate that Moore was a Parole Agent for the Michigan Department of Corrections, not an employee or agent of the Lenawee County Sheriff's Department. Further, the facts show that Smith had been experiencing DT symptoms for close to forty-eight hours prior to Moore's arrival at the jail, that a physician had been notified of Smith's condition, that jail officials were told to monitor Smith, and that Moore was present at the jail for a matter of minutes only. In addition, Plaintiff's own brief acknowledges that Lenawee County jail officials failed to check Smith until forty minutes after Moore left the jail, though they had previously recorded her movements every ten to fifteen minutes. Applying these facts to Michigan's narrow definition of proximate cause for the purposes of governmental immunity, we cannot say that a genuine issue of material fact exists as to whether Moore's failure to intercede was *the* proximate cause of Smith's death, as opposed to merely *a* proximate cause.

And the facts in *Dominguez*, where we found an issue of fact on causation, are distinguishable from this case. Unlike in that case, Smith was not in Moore's custody and Moore was not responsible for her care at the time of her death. Thus, that case does not control the outcome here. Further, while the Michigan appellate court's reasoning in *Hartzell* provides persuasive authority only, we find its factual similarities instructive. As in that case, other actors had more direct control over Smith's care and well being than Moore did in this case. We find persuasive that court's holding that the actions of

the investigating officer were not the proximate cause of the inmate's death because other actors' breach of the standard of care was the one most immediate cause of death. *See Hartzell*, 2005 WL 1106360 at \*16.

Plaintiff cites two cases which she claims support her argument that a genuine issue of fact exists as to whether Moore's actions were the proximate cause of Smith's death. In the first case, *Thompson v. Rochester Cmty. Schs.*, No. 269738, 2006 WL 3040137 (Mich. Ct. App. Oct. 26, 2006), a Michigan appellate court denied governmental immunity to a group of school employees in a case where a student collapsed in the school cafeteria and ultimately died. None of the school officials in that case attempted to resuscitate the student after she collapsed. *Id.* at \*1. However, the facts in *Thompson* are distinguishable from the case at bar because unlike the defendants in *Thompson*, Moore is not an employee of the Lenawee County Sheriff's Department and he was not responsible for Smith's care at the time of her death. Plaintiff also cites *Philpott v. City of Portage*, No. 4:05-CV-70, 2006 WL 2385316 (W.D. Mich. Aug. 17, 2006), to support her position. In that case, the district court denied governmental immunity to a police officer where the plaintiff claimed that tight handcuffs had caused nerve injury. *Id.* at \*7. The court determined that even though the officer did not personally handcuff the plaintiff, he could have adjusted the cuffs after hearing the plaintiff complain about the tightness. *Id.* The facts in *Philpott* are again distinguishable from the case at bar because unlike the officer in that case, Moore was not directly involved in Smith's care at the time of her death. In short, neither of these cases persuades us that a reasonable jury could find that Moore's actions were the proximate cause of Smith's death. Based on Moore's limited role, his conduct does not constitute "the one most immediate, efficient, and direct cause preceding [the] injury." *Robinson*, 613 N.W.2d at 317. He is therefore entitled to governmental immunity under M.C.L. § 691.1407.

**IV. Conclusion**

For the foregoing reasons, we REVERSE the district court's denial of governmental immunity and REMAND with instructions for the district court to enter summary judgment in favor of Moore.