NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0222n.06

Case No. 15-1684

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 25, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JESSE GOODE, Estate of by Personal Representative Kelley Collett, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| BERLANGA, Deputy, | ) ) | |
| Defendant-Appellant. | ) ) | |

_____/

Before: MERRITT, BATCHELDER, and DONALD, Circuit Judges

**MERRITT, Circuit Judge.** This is a fact-intensive 42 U.S.C. § 1983 case by a deceased prisoner's estate against a prison guard. The prisoner, Jesse Goode, died of "heroin intoxication." The central question in this case is whether the prison guard, Deputy Domingo Berlanga, is entitled to "qualified immunity" from suit based on the plaintiff's Eighth Amendment theory of "deliberate indifference" to Goode's serious medical needs. We conclude that Berlanga's conduct did not violate "clearly established . . . constitutional rights of which a reasonable person would have known" under applicable Supreme Court doctrine. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition, we conclude that Berlanga is entitled to summary judgment on plaintiff's state law

gross negligence claim. The governing law leads us to a conclusion that is fully consistent with our sense of fairness concerning the outcome of this case.

## I.

When Berlanga came on duty at approximately 3:00 P.M. on the day that Goode died, he observed Goode returning to his cell from taking a shower. Goode appeared normal. Shortly thereafter, Goode's cell mate informed Berlanga that Goode was "hot and burning up" and would not be able to perform his work duties that afternoon because he needed to lie down and rest. At approximately 4:15 P.M., Berlanga checked on Goode in his cell and found him sleeping normally on his bunk. Shortly thereafter at approximately 4:30 P.M., Goode's cell mate asked Berlanga to check on Goode because Goode "was not looking good," was "making some type of gurgling sounds" with "heavy snoring," and had "foam coming out of his mouth." Goode's cell mate and another prisoner state that, despite several further warnings along the same line, Berlanga unreasonably "waited five to seven minutes" before he came to the cell. As soon as he observed Goode, Berlanga immediately called for medical assistance, and Goode was carried to the local hospital where he died of "heroin intoxication" shortly after arriving. The central question in this case is whether Berlanga's alleged delay violated Goode's "clearly established constitutional rights."

## II.

We find no case on point, nor any line of reasoning, that would clearly impose a duty on Berlanga — taking into account what he had observed about Goode during the last hour and his other responsibilities — to go to Goode's cell without a short delay of five to seven minutes.

The estate of Jesse Goode ("Goode") alleges that Berlanga is liable under 42 U.S.C. § 1983 because Berlanga's deliberate indifference to Goode's serious medical needs violated

Goode's rights under the Eighth Amendment. In defense, Berlanga has invoked the doctrine of qualified immunity, which is a defense not just against liability, but against suit itself. *Pearson*, 555 U.S. at 231. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Because the "driving force" behind the qualified immunity doctrine is the "desire to ensure that 'insubstantial claims' against government officials will be resolved prior to discovery," immunity questions should be resolved at the earliest possible stage of litigation. *Pearson*, 555 U.S. at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (internal quotation marks and brackets omitted)). In determining whether government officials are entitled to qualified immunity, courts "ask two questions: First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008). Courts have discretion to decide which of the "two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," *Pearson*, 555 U.S. at 236, and indeed "should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Pearson*, 555 U.S. at 236-37). The plaintiff "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (quoting *Garretson v. City of Madison Heights*, 403 F.3d 789, 798 (6th Cir. 2005) (internal quotation marks omitted)).

"We review *de novo* a district court's denial of a defendant's motion for summary judgment on qualified immunity grounds." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013). In reviewing a summary judgment motion, we view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). In the qualified immunity context, "this usually means adopting . . . the plaintiff's version of the facts, unless the plaintiff's version is 'blatantly contradicted by the record, so that no reasonable jury could believe it . . . .'" *Stoudemire*, 705 F.3d at 565 (quoting *Harris*, 550 U.S. at 380).

## III.

A clearly established right "is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, — U.S. —, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). While courts do not require a case directly on point in order to find that a right is clearly established, "existing precedent must have placed the statutory or constitutional questions beyond debate." *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "The pre-existing law that makes a right clearly established comes primarily from the Supreme Court and the Sixth Circuit, but it can also come from other courts, including other circuits and district courts, if the decisions of those courts 'point unmistakably to the unconstitutionality of the conduct' and are 'so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.'" *Linden v. Piotrowski*, 619 F. App'x 495, 500 (6th Cir. 2015) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 427 (6th Cir. 2006)).

"'The difficult part of this inquiry is identifying the level of generality at which the constitutional right must be clearly established.'" *Cockrell*, 468 F. App'x at 494 (quoting *Casey*

*v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)). The Supreme Court has repeatedly stated that courts should *not* "'define clearly established law at a high level of generality.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 131 S. Ct. at 2074). Instead, the "dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (internal quotation marks omitted). Thus, the plaintiff bears the burden of showing "'that the right was clearly established in light of the specific context of the case, not as a broad general proposition.'" *Piotrowski*, 619 F. App'x at 501 (quoting *Perez*, 466 F.3d at 427)).

With this guidance in mind, we define the question this case presents as whether at the time of the incident it was clearly established that the Eighth Amendment forbids a prison guard, who had observed a prisoner sleeping in his bunk only minutes earlier, from delaying five to seven minutes in checking on that prisoner after being asked by other inmates to attend to the prisoner because he appeared to be seriously ill. Because neither Supreme Court precedent, our precedents, nor those of our sister circuits would have put every reasonable officer on notice that Berlanga's conduct violated the Eighth Amendment in April 2011, we hold that Berlanga is entitled to qualified immunity even if he did act with deliberate indifference to Goode's serious medical condition. We need not decide the separate "deliberate indifference" question.

Accepting — as we must — Goode's version of the facts, Berlanga's conduct in delaying five to seven minutes before checking on Goode did not violate clearly established law. As previously stated in Section I, the evidence establishes that Berlanga: (1) saw Goode exit the shower and walk to his cell around 3:00 P.M.; (2) learned from another inmate that Goode was "hot and burning up" and would not perform his work duties that afternoon; (3) observed Goode sleeping in his cell at 4:15 P.M., only fifteen minutes before inmates asked him to check on Goode; and (4) delayed five to seven minutes after being asked by inmates to check on Goode

because Goode was making gurgling noises and foaming at the mouth. The fact that Berlanga had personally observed Goode both leaving the shower and then sleeping shortly before he was told that Goode appeared seriously ill would not lead Berlanga to suspect or guess that Goode had ingested a lethal dose of heroin and was at death's door. Goode fails to point to any of our cases clearly establishing that in such circumstances Berlanga had an obligation under the Eighth Amendment to check on Goode without a brief delay. In fact, the closest Goode gets to establishing such an obligation is through reference to *Speers v. County of Berrien*, 196 F. App'x 390, 398-99 (6th Cir. 2006), but even this case falls far short of clearly establishing the right Goode asserts.

In *Speers*, a prisoner died in custody after suffering from delirium tremens. *Id.* The night of Speers's death, two prison guards observed Speers acting strangely in his cell, and an inmate subsequently alerted the two guards that Speers was "pressed up against the plexiglass window in his cell, with 'this foam stuff . . . in his open mouth,' with a 'hideous, weird look [and] trying to press his head through the plexiglass.'" *Id.* at 397. After learning of Speers's symptoms, the guards waited more than fifteen minutes to check on Speers, and upon checking Speers's cell, took no further action because they found Speers lying on the floor in his underwear. *Id.* at 397. We denied qualified immunity to both guards because a triable issue of fact existed as to whether the guards, upon learning that Speers was foaming at the mouth and observing him collapsed in his cell, should have contacted medical personnel in response to Speers's condition or tried to engage Speers verbally or enter his cell. *Id.* at 398. Even under Goode's version of events, Berlanga, unlike the officers in *Speers*, immediately entered Goode's cell and quickly called for medical assistance after seeing Goode lying on his bunk, making gurgling noises, and foaming at the mouth. *Id.* Moreover, it bears emphasizing that the guards' delay in *Speers* was not a factor

in our decision to deny them qualified immunity, *id.* at 398, and in any event, Berlanga's five-to-seven-minute delay is significantly shorter than the guards' more than fifteen-minute delay in *Speers*, *id.* at 397-98. Finally, and significantly, while the guards in *Speers* knew the prisoner was suffering from delirium tremens and had already observed the prisoner acting strangely before another inmate asked them to check on the prisoner, *id.* at 398, it is undisputed that Berlanga had observed Goode sleeping on his bunk only minutes earlier and had no prior knowledge that Goode was suffering from a serious illness.

Our concurring colleague reads *Speers* differently, asserting that *Speers* dictates that "Berlanga's prior observations of Goode are *irrelevant* to whether Berlanga is entitled to qualified immunity." *Post,* at 1 (emphasis added). But in *Speers*, 196 F. App'x at 398-99, an unpublished opinion that is not binding precedent, we stated that the guards' prior observations and knowledge of Speers' alcohol withdrawal and strange behavior were relevant to our decision to deny qualified immunity:

> Both guards handled the shift during which Speers died. Both of them knew that Speers was experiencing alcohol withdrawal. *Both knew that his condition was serious enough that he needed to be checked regularly. Both saw Speers acting strangely during the shift*. . . . [A]t this stage in the case we must . . . allow a jury to resolve this material dispute of fact.

*Id.* (emphasis added). In short, *Speers* communicates that a guard's prior observations and knowledge of a prisoner's illness and behavior are indeed relevant to the question of whether the guard is entitled to qualified immunity. And moreover, it bears emphasizing that the Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 131 S. Ct. at 2074). The Court has mandated that the clearly established "inquiry 'must be undertaken in light of the specific context of the case.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198

(2004)).  We adhere to the Court's guidance by properly considering Berlanga's short delay as well as his prior observations and knowledge of Goode's illness and behavior—all highly relevant facts that are specific to this case.

Goode and the district court also rely on *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004), to establish Berlanga's obligation to check on Goode without delay.  But *Blackmore* also falls far short of clearly establishing the right Goode asserts.  In *Blackmore*, we held that a reasonable jury could find that prison guards violated the Eighth Amendment by acting with deliberate indifference to a prisoner's serious medical needs when the prisoner "complained of 'sharp' and 'severe' stomach pains for an extended period of time," vomited, and "complained orally and in writing *for over two days* before receiving medical treatment."  *Id.* (emphasis added).  The facts in *Blackmore* in no way clearly establish that Berlanga had an obligation to immediately respond to inmates' requests that he check on Goode — a prisoner he had observed sleeping in his cell only minutes earlier — because other inmates told him that Goode seemed to be seriously ill.  *Id.*  Our holding in *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005), where we denied qualified immunity to officers who beat a suspect, observed him in significant physical distress, and "made no attempt to summon . . . medical care" until six minutes later, also does not come close to establishing the right Goode asserts because Berlanga, unlike the officers in *Estate of Owensby*, neither caused nor observed Goode's injury prior to his short delay in checking on Goode.  *Id.*

Finally, a survey of our sister circuits' case law reveals no precedent clearly establishing that, as of April 2011, a prison guard, who had observed a prisoner sleeping only minutes earlier, had an obligation to respond without brief delay to inmates' requests that he check on the prisoner because the prisoner appeared to be seriously ill.  In fact, our sister circuits have only

denied qualified immunity to officers who briefly delayed in obtaining medical assistance for prisoners when the officers either personally observed the prisoner's serious medical condition prior to the delay or actually caused the prisoner's medical condition. *See, e.g.*, *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009) (denying qualified immunity to officer who, after noticing that the inmate was not breathing, failed to give the inmate CPR for seven minutes as he stood over the inmate in a prison cell); *Estate of Bradich v. City of Chicago*, 413 F.3d 688, 691-92 (7th Cir. 2005) (denying qualified immunity to officers who had allegedly delayed ten minutes in calling for help after discovering that a prisoner had hanged himself); *Tlamka v. Serrell*, 244 F.3d 628, 633-34 (8th Cir. 2001) (denying qualified immunity to officers who delayed ten minutes in providing CPR or any other form of assistance to an inmate they observed suffering a heart attack).

Because we cannot say that every reasonable official would have understood that Berlanga's delay in checking on Goode violated Goode's Eighth Amendment rights, we reverse the district court's denial of qualified immunity to Berlanga.

## IV.

The district court held that Berlanga was not entitled to summary judgment on Goode's gross negligence claim because a reasonable juror could conclude that Berlanga, through his alleged five-to-seven-minute delay "in attending to Goode, after having been notified that Goode was in obvious distress, foaming at the mouth and making gurgling sounds," was grossly negligent and was the proximate cause of Goode's death. On appeal, Berlanga makes two arguments as to why he should be entitled to summary judgment. We review the district court's denial of summary judgment *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999).

To withstand a defendant's summary judgment motion on a gross negligence claim, a plaintiff must present evidence from which a reasonable jury could find that the defendant's conduct was "so reckless as to demonstrate a substantial lack of concern for whether injury results." *Maiden v. Rozwood*, 597 N.W.2d 817, 824 (Mich. 1999) (quoting Mich. Comp. Laws § 691.1407(7)(a)). Evidence of ordinary negligence does not create a material question of fact concerning gross negligence. *Maiden*, 597 N.W.2d at 824. "Gross negligence involves 'almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge.'" *Lambert v. Green Oak Twp. Police Dep't.*, No. 297088, 2011 WL 1815385, at *10 (Mich. Ct. App. May 12, 2011) (quoting *Tarlea v. Crabtree*, 687 N.W.2d 333, 339-40 (Mich. Ct. App. 2004)). Finally, courts should take care to construe the Michigan legislature's grant of governmental immunity broadly, "with exceptions construed narrowly." *Smith v. Cnty. of Lenawee*, 600 F.3d 686, 690 (6th Cir. 2010) (citing *Hinojosa v. Dep't of Natural Res.*, 263 Mich. App. 537, 554 (Mich. Ct. App. 2004)).

The district court erred in finding that a reasonable jury could conclude that Berlanga, through his delayed response to inmates' request that he check on Goode, was "so reckless as to demonstrate a substantial lack of concern for whether an injury [to Goode] result[ed]." Mich. Comp. Laws § 691.1407(7)(a). Again, the evidence — when viewed in the light most favorable to Goode — establishes that Berlanga (1) saw Goode exit the shower and walk to his cell around 3:00 P.M.; (2) learned from another inmate that Goode was "hot and burning up" and would not perform his work duties that afternoon; (3) observed Goode sleeping in his cell at 4:15 P.M.; (4) delayed five to seven minutes after being asked by inmates around 4:30 P.M. to check on

Goode because Goode was making gurgling noises and foaming at the mouth; and (5) immediately tried to aid Goode upon observing Goode's condition. Berlanga's actions in no way amount to "conduct so reckless as to demonstrate a substantial lack of concern for whether injury [to Goode] result[ed]," Mich. Comp. Laws § 691.1407(7)(a), because Berlanga, despite hearing from inmates that Goode seemed to be seriously ill, was not aware that Goode, whom he had observed sleeping only fifteen minutes earlier, was experiencing a life threatening heroin overdose; instead, Berlanga's previous observations of Goode suggested to Berlanga that Goode was either completely healthy or simply experiencing a minor illness. *See Hartzell v. City of Warren,* No. 252458, 2005 WL 1106360, at *16 (Mich. Ct. App. May 10, 2005) (finding that defendant officer's awareness of the prisoner's need for medication, along with his failure to ensure that prisoner received the medication, did not amount to gross negligence as a matter of law). Moreover, Berlanga's actions — attempting to rouse Goode and calling for help — upon first observing Goode's medical condition show that Berlanga was indeed concerned for Goode's well-being. *See Oostdyk ex. rel. Budd v. Caledonia Cmty. Sch.*, No. 312607, 2014 WL 588063, at *4 (Mich. Ct. App. Feb. 13, 2014) (granting government officials' summary judgment motion on a gross negligence claim in part because the officials' concern for the injured-plaintiff's well-being indicated that the officials were not grossly negligent). In short, Berlanga's alleged delay, while certainly very sad in hindsight, does not demonstrate a substantial lack of concern for Goode's condition.

In light of our disposition of Goode's gross negligence claim, we need not consider Berlanga's alternative defense concerning proximate causation.

**VII.**

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

**BERNICE B. DONALD**, concurring. While I join in the Court's judgment, I write separately because I disagree with the majority's analysis of *Speers v. County of Berrien*, 196 F. App'x 390 (6th Cir. 2006).

The majority frames the question before us as "whether at the time of the incident it was clearly established that the Eighth Amendment forbids a prison guard, *who had observed a prisoner sleeping in his bunk only minutes earlier*, from delaying five to seven minutes in checking on that prisoner after being asked by other inmates to attend to the prisoner because he appeared to be seriously ill." Slip Op. at 5 (emphasis added). Throughout its opinion, the majority continually relies on Berlanga's prior observations of Goode. *See, e.g.*, Slip Op. at 6 (noting "[t]he fact that Berlanga had personally observed Goode both leaving the shower and then sleeping shortly before he was told that Goode appeared seriously ill would not lead Berlanga to suspect or guess that Goode had ingested a lethal dose of heroin and was at death's door").

However, Berlanga's prior observations of Goode are irrelevant to whether Berlanga is entitled to qualified immunity. Up until Berlanga arrived at Goode's cell door, the facts here precisely mirror those in *Speers*, and therefore, *Speers* "squarely governs" this case. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). Here and in *Speers*, the guards knew that the decedent had been exhibiting non-serious medical symptoms. *Compare* R. 88-6, PageID# 1023 (Berlanga indicating that he understood Goode to have a fever and to be too sick to perform his housing duties) *with Speers*, 196 F. App'x at 395, 399 (explaining that the guards knew that Speers was exhibiting symptoms of the non-serious version of alcohol withdrawal). The guards also checked on each decedent and observed behavior that did not indicate a need for immediate medical attention. *Compare* R. 88-6, PageID# 1023, 1026 (Berlanga observing Goode leaving

- 13 -

the shower and sleeping) *with Speers*, 196 F. App'x at 397 (guards observing Speers sleeping on the floor in his underwear, playing with his food slot, and picking at something on the wall). Another inmate then informed the guards that each decedent needed medical attention, relaying substantially similar symptoms. *Compare* R. 88-6, PageID# 1028 (foaming at the mouth, heaving snoring, gurgling noises, and "not looking good") *with Speers*, 196 F. App'x at 397 (foaming at the mouth, "hideous, weird look," "trying to press his head through the plexiglass," collapsing, and twitching). Lastly, the guards delayed in checking on the decedent. *Compare* R. 104, PageID #1376-77 (delaying five to seven minutes) *with Speers*, 196 F. App'x at 397-98 (delaying fifteen minutes). Thus, the facts from *Speers* are not "too factually distinct to" guide our decision here. *Mullinex*, 136 S. Ct. at 312.

Because *Speers* is indistinguishable, we must abide by its relevant mandates. *See Brosseau*, 543 U.S. at 201. *Speers* states that we measure a failure to act from the moment that an official is *informed* of a substantial risk of serious harm, without regard to the officer's prior observations of the decedent. The *Speers* Court was explicit: "[A fellow inmate's] *statement*—that Speers had 'foam' in his mouth, had a 'hideous, weird look,' was 'trying to press his head through the plexiglass,' and 'collapsed' and was 'twitching,' JA 692-93—made [the guards] 'aware of facts from which the inference could be drawn that a substantial risk of serious harm' to Speers existed." 196 F. App'x at 398 (emphasis added). *Speers* affirmatively dispelled the significance of the guards' prior observations: "*[w]ith or without alcohol withdrawal, with or without training*, the symptoms that [the fellow inmate] *reported* establish a triable issue of fact about whether the guards should have contacted medical personnel in response to this problem or at least should have tried to engage Speers verbally or entered his cell." *Id.* (emphasis added). Thus, Berlanga's prior observations of Goode are not significant for purposes of our review. Our

analysis should only focus on Berlanga's conduct subsequent to being informed of Goode's serious medical symptoms.

The majority also distinguishes *Speers* by noting that "in any event, Berlanga's five-to-seven-minute delay is significantly shorter than the guards' more than fifteen-minute delay in *Speers.*" Slip Op. at 6-7. Even though we should be wary of cases that are too factually distinct, I fail to see how differentiating between a mere matter of minutes effectively distinguishes *Speers*. While a ten-minute delay may be reasonable in one instance, it could be deemed excessive in another. We should not consider such minor differences in determining whether the law is clearly established.

This case is a prime example. The majority accounts for Berlanga's "other responsibilities," Slip Op. at 2, in finding that his five-to-seven-minute delay did not violate clearly established law. It may be that in a particular case other responsibilities prevented an officer from promptly responding to a substantial risk of serious harm. However, Berlanga stated that he *immediately* checked on Goode upon being informed of Goode's serious medical symptoms. R. 88-6, PageID# 1028. It therefore seems that any delay could be construed as a failure to act in response to a known substantial risk of serious harm. Accordingly, whether a particular delay was reasonable in light of surrounding circumstances is a consideration better suited for answering whether there actually was an Eighth Amendment violation. When we are only attempting to determine whether the law is clearly established, parsing between mere minutes amounts to a difference without a real distinction.

All of that being said, I agree with the majority that *Speers* does not clearly state that the guards' brief delay constituted deliberate indifference in violation of the Eighth Amendment. In dicta, *Speers* simply mentions that the parties do not dispute that such symptoms require

"prompt" medical attention. 136 F. App'x at 398. Our court has yet to hold that a brief delay could constitute a violation of the Eighth Amendment. For that reason, I too would reverse the district court and grant Berlanga qualified immunity.