NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0685n.06

Case No. 16-1346

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MALGORZATA KRAWCZYK, Personal Representative of Estate of Robert Klepacki, | ) ) ) | **FILED** Dec 19, 2016 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| TOWNSHIP OF HAGAR, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| Defendant, | ) ) | |
| and | ) ) | |
| IZZY DIMAGGIO, Hagar Township Supervisor; DEBORAH L. KELLEY, Hagar Township Clerk, | ) ) ) ) | |
| Defendants-Appellants. | ) ) | |

BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. During a vacation in Hagar Township, Michigan, Robert Klepacki, a citizen of Illinois, drowned when a rip current in Lake Michigan pulled him under. His widow, Malgorzata Krawczyk, sued the township and two township officials on behalf of his estate, alleging that they should have closed the beach or posted a warning after the National Weather Service issued a riptide alert for that day. Before filing an answer, the officials moved to dismiss on the grounds that Michigan's Governmental Tort Liability Act gave them absolute or qualified immunity. The district court declined to dismiss the case because the officials had not yet shown all of the facts necessary to establish immunity. We agree and affirm.

I.

On August 28, 2011, Robert Klepacki, Malgorzata Krawczyk, and their three-year-old son Jacob visited the Hagar Township Park beach on Lake Michigan. When a rip current pulled him under, Klepacki yelled out to his wife on the beach, who ran to people nearby, borrowed a cell phone, and called for help. Klepacki drowned before anyone could save him.

As material here, Krawczyk filed a complaint against Hagar Township Supervisor Izzy DiMaggio and Township Clerk Deborah Kelley, claiming they were grossly negligent. According to the since-amended complaint, the two defendants were responsible for maintaining the town beach, knew or should have known that the National Weather Service had issued a small-craft advisory and a rip-current warning that day for the Hagar Park beach area, and should have warned beachgoers of the dangerous water conditions.

DiMaggio and Kelley moved for dismissal of the gross negligence counts under Civil Rule 12(b)(6). The district court refused to dismiss the claims. DiMaggio and Kelley filed this interlocutory appeal.

II.

Before reaching the merits, we must consider whether the district court's denial of immunity amounts to an appealable order. Precedent answers the question. "[A]n order granting or denying governmental immunity under M.C.L. § 691.1407," we have held, "constitutes a final order for the purposes of federal appellate review." *Smith v. Cty. of Lenawee*, 600 F.3d 686, 689 (6th Cir. 2010). In *Livermore ex rel. Rohm v. Lubelan*, we clarified that we would treat Michigan's governmental litigants just as Michigan's own courts would, and thus accept "jurisdiction over interlocutory appeals" of such claims. 476 F.3d 397, 408 (6th Cir. 2007). We have adhered to *Livermore* ever since. *See Smith*, 600 F.3d at 689; *Floyd v. City of Detroit*,

518 F.3d 398, 409 (6th Cir. 2008); *Marvin v. City of Taylor*, 509 F.3d 234, 251 (6th Cir. 2007). And it resolves the jurisdictional dispute in DiMaggio and Kelley's favor: We may hear this appeal.

Krawczyk responds that we should ignore *Livermore* and follow *Walton v. City of Southfield*, which held that a denial of governmental immunity was *not* a final appealable order under Michigan law. 995 F.2d 1331, 1344 (6th Cir. 1993). Krawczyk acknowledges that *Walton* predates the 2002 amendment to Michigan Court Rule 7.202, which added denials of governmental immunity to the list of appealable orders. Even so, she adds, it was the Michigan Supreme Court, not the Michigan legislature, that amended Michigan Court Rule 7.202 to allow appeals of orders denying immunity, meaning that we should treat the amendment as a state procedural rule and thus ignore it in favor of federal procedural rules. We should look, she says, only to Michigan's substantive immunity law, which remains unchanged since *Walton*. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77–78 (1938). Strong or weak, powerful or not, these arguments do not give us a license to sidestep *Livermore* and the other cases that invoke it. *See Livermore*, 476 F.3d at 407–08. Because this case "falls within the bounds of our binding precedent, we are not at liberty to revisit *Livermore* as [Krawczyk] requests." *Smith*, 600 F.3d at 689.

### III.

That leaves a merits question: Are DiMaggio and Kelley entitled to absolute or qualified immunity under Michigan's Governmental Tort Liability Act on the basis of the pleadings? To survive a motion to dismiss, Krawczyk must allege facts in the complaint that create a "plausible" claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the same time, government defendants like DiMaggio and Kelley retain the burden "to raise and prove

[their] entitlement to immunity." *Odom v. Wayne Cty.*, 760 N.W.2d 217, 227–28 (Mich. 2008). They have not met that burden, at least at this early stage of the case.

*Absolute immunity.* Michigan law creates absolute immunity in this setting: "A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Mich. Comp. Laws § 691.1407(5). The first step in applying the immunity statute is to "[d]etermine whether the individual is a judge, a legislator, or the highest-ranking [elective or] appointed executive official." *Odom*, 760 N.W.2d at 228. If so, a court looks to whether the challenged act was "within the scope of [that official's] authority." Mich. Comp. Laws § 691.1407(5); *Petipren v. Jaskowski*, 833 N.W.2d 247, 254 (Mich. 2013).

DiMaggio and Kelley do not satisfy either step because they have left us with several factual and legal uncertainties. All that we know for sure is that they are the Township Supervisor and Township Clerk, respectively—both elected positions. But we do not know the responsibilities of each job, what DiMaggio and Kelley do each day, whether their positions should be treated as executive or legislative (or as a hybrid), or indeed how Township governance works. There are many pertinent questions here. All of them can be answered through affidavits or discovery or perhaps by local ordinances that neither of them cites. And each of these questions needs to be answered before we can fairly apply the absolute-immunity statute.

Even if we assume for the sake of argument that both defendants are executive officials, that does not eliminate the uncertainties. They have not demonstrated that they are "*the* elective or highest appointive executive official" of their level of government. Mich. Comp. Laws

4

§ 691.1407(5) (emphasis added); *see id.* § 168.358(1). They have not identified any statutory provision clarifying that township supervisors and clerks are the highest executive officials of a level of government. And they have not produced any Michigan case to that effect. Nothing in the record or the briefs establishes that DiMaggio and Kelley sit atop the executive hierarchy of Hagar's local government. Maybe they do; maybe they don't. That leaves us in the dark about whether Michigan gives them absolute immunity for governmental acts of the kind alleged. It may still turn out that DiMaggio, Kelley, or both are entitled to the absolute immunity they request. But the burden to prove immunity is theirs, including the burden of establishing the requisite facts and law that proves their point.

Other questions turn on the nature of this local government and how it interacts with the immunity statute. The defendants have not shown us the "charter, ordinances, or other local law" clarifying "the structure and allocation of [executive] powers in [this] particular level of government." *Petipren*, 833 N.W.2d at 259. Nor have they shown us provisions detailing how DiMaggio's and Kelley's positions fit into that structure. Nor have they shown us the scope of their respective authorities under state and local law. We haven't seen anything showing who, if anyone, in the township bears responsibility for managing the Hagar beaches. Nor do we know if there are any limits on that authority imposed by Michigan state law or perhaps the terms of the town's lease of state coastline. *See Hutchinson v. Twp. of Portage*, No. 240136, 2003 WL 21958278, at *4 (Mich. Ct. App. Aug. 14, 2003). Indeed, it is not even clear whether beach safety is a matter preeminently of state or local law. Perhaps these questions cannot be answered without certifying them to the Michigan Supreme Court or asking the opinion of the Michigan Attorney General. If that's necessary, DiMaggio and Kelley should request it from the district

5

court. In the end it falls to them to present the materials, both legal and factual, necessary to resolve these issues. And they have not done so yet.

Trying to fend off this conclusion, DiMaggio, Kelley, and their amicus point to Michigan statutes that say that township supervisors and clerks are (1) elected and (2) on the township board, which is the highest elective governing body in a township. Mich. Comp. Laws §§ 41.70, 168.341, 168.358(1). Taken together, they say, those facts suffice to establish a right to absolute immunity so long as the challenged act (failure to close the beach or post warnings) is within the scope of their executive authority, as Krawczyk concedes is the case here.

Would that it were that easy. As noted, the absolute immunity provision by its terms seems to contemplate absolute immunity for just one executive official. Section 691.1407(5) says that "[a] judge, *a* legislator, and *the* elective or highest appointive executive official" gets absolute immunity. (Emphasis added). By using indefinite articles for some officials ("a judge," "a legislator") and the definite article for executive officials ("the . . . executive official"), the statutory language suggests that only one executive official gets absolute immunity. *Robinson v. City of Lansing*, 782 N.W.2d 171, 179–80 (Mich. 2010) (distinguishing between "a" and "the"); *Massey v. Mandell*, 614 N.W.2d 70, 73 n.5 (Mich. 2000) (same); *Work v. United States ex rel. McAlester-Edwards Coal Co.*, 262 U.S. 200, 208 (1923) (distinguishing "an" and "the"). It is not clear how this provision should operate when a level of government, like a Michigan township, has no single executive official perched at the top of it. Perhaps it means that no one is entitled to absolute immunity for executive acts. Or perhaps it means all township board members are entitled to absolute immunity because these local governments do not reflect traditional separation-of-powers principles, and all of the township board members are best thought of as legislative officials. *See Armstrong v. Ypsilanti Charter Twp.*, 640 N.W.2d 321,

330 (Mich. Ct. App. 2001) (explaining that "a charter township is made up of a legislative 'branch' only and does not include an executive 'branch'"). Or perhaps it turns on whether the township is a charter township or not. *See id.* Or perhaps we should think of the township board as the executive body and each member as absolutely immune for acts within the scope of the board's authority. The Michigan Supreme Court to our knowledge has never answered these questions, and each possibility is plausible. On remand, the parties will have a second opportunity, one way or another, to answer these questions.

*Qualified immunity*. Michigan government employees who operate below the top tier are not left in the cold, suable at the whim of members of the public for any of their actions. Michigan law provides governmental officers and employees with immunity when the employee (a) "is acting or reasonably believes he or she is acting within the scope of his or her authority," (b) "[t]he governmental agency is engaged in the exercise or discharge of a governmental function," and (c) the challenged "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2).

At this stage of the case, the parties contest just one of these elements: proximate cause. DiMaggio and Kelley say that their failure to close the beach or warn of the rip current cannot be "the proximate cause" of Klepacki's death as a matter of Michigan law. The Michigan Supreme Court, as they point out, has explained that "the phrase 'the proximate cause' as used in the employee provision of the governmental immunity act, Mich. Comp. Laws § 691.1407(2), . . . means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'" *Robinson v. City of Detroit*, 613 N.W.2d 307, 311 (Mich. 2000). Invoking this distinction—not unlike the "a" versus "the" dispute above—DiMaggio and Kelley claim that the

rip current was the "most immediate, efficient, and direct cause" of the death and that they therefore cannot be subject to suit. Appellants' Br. 25.

We cannot agree, this time because DiMaggio and Kelley do not have the facts they need. One, even if DiMaggio and Kelley are right that Michigan law directs us to decipher just one proximate cause of such an accident, it's hard to say at the motion-to-dismiss stage whether it was the rip current, the lack of warning, or the decision not to close the beach that was *that* cause. Two, if we ruled for the defendants at this stage, before any development of the record or fact finding, that would mean that, when an environmental danger causes an injury, inadequate precautions from government officials are *never* the proximate cause. Under such a rule, failure to act or warn claims, deliberate indifference claims—really any claim alleging something less than assault—could never proceed against a government official. That is a bridge too far, one not contemplated (best we can tell) by any Michigan precedents.

DiMaggio and Kelley point to cases where Michigan courts granted qualified immunity as a matter of law because the challenged act was not the proximate cause of the injury. They rely most heavily on *Beals v. Michigan*, where the Michigan Supreme Court held that a distracted lifeguard was not the proximate cause of a fatality when a swimmer drowned in a pool the lifeguard should have been supervising. 871 N.W.2d 5, 6–7 (Mich. 2015). But it is telling that *every* case they cite granted relief at summary judgment (which Michigan calls "summary disposition")—*after* there were facts in the record. That includes *Beals. Id.* at 10. And it includes the others. *See Robinson*, 613 N.W.2d at 311; *Miller ex rel. Miller v. Lord*, 686 N.W.2d 800, 801 (Mich. Ct. App. 2004); *Tarlea v. Crabtree*, 687 N.W.2d 333, 338 (Mich. Ct. App. 2004); *Kruger v. White Lake Twp.*, 648 N.W.2d 660, 661 (Mich. Ct. App. 2002). These cases reinforce that where, as here, the plaintiff alleges that the defendant's acts were the proximate

cause of the injury, the defendant generally cannot invoke Michigan qualified immunity before at least some fact-finding.

We realize that "proximate cause is a high bar" under Michigan's immunity statute. *Walker v. Detroit Pub. Sch. Dist.*, 535 F. App'x 461, 467 (6th Cir. 2013). And it may well turn out that DiMaggio and Kelley are entitled to immunity because no reasonable jury could find that their conduct was "the proximate cause" of Klepacki's death. But whether Krawczyk clears Michigan's high causal bar is an issue of fact currently disputed by the parties and deserving of at least some discovery.

For these reasons, we affirm.